**UNITED STATES COURT OF APPEALS**
**Filed 6/12/96**
**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

TERRY L. PRIMM,

      Defendant-Appellant.

No. 95-3279
(D.C. No. 95-CR-10023)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

      Terry L. Primm was convicted by a jury of possession of a firearm in violation of

18 U.S.C. §§ 922(g) and 924(a)(2) and of possession of heroin and cocaine in violation of

21 U.S.C. § 844. Mr. Primm raises two issues on appeal. First, he contends a

preindictment delay of more than two years and four months violated his Sixth

Amendment right to a speedy trial and deprived him of due process under the Fifth

Amendment. Second, he claims his Fourteenth Amendment due process rights were

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

violated when, prior to trial, several items of evidence were destroyed. Because Mr. Primm did not prove the delay caused him actual prejudice or the government orchestrated the delay or the destruction of evidence in bad faith to gain a tactical advantage, we affirm.

I.

The parties are well-acquainted with the facts. Therefore, we will not recapitulate them here except to the extent necessary to support our analysis. On September 23, 1992, a Deputy United States Marshal and officers from the Kansas Bureau of Investigation, the Sedgwick County Sheriff's Department, and the Wichita Police Department went to Mr. Primm's residence to arrest him on an outstanding state warrant for a parole violation. After entering the house, one of the officers noticed what appeared to be marijuana on a table in plain view. The officers arrested Mr. Primm for his parole violation and obtained a search warrant for the house based on their discovery of the marijuana. In their search of one of the bedrooms, the officers found a loaded revolver under the bed mattress. They also found a pair of men's jeans with a packet of brown powder in the pocket and a woman's blouse containing eleven "snow seal" packets of white powder. Finally, the officers found personal items belonging to Mr. Primm in the bedroom, including four prescription pill bottles, a phone bill, and a traffic ticket, indicating he stayed in the room.

The white powder field tested positive for cocaine and, after a lab test, the brown substance was determined to be heroin. All of the evidence was photographed. The

2

United States Marshals Service retained the photographs, the gun was turned over to the Bureau of Alcohol, Tobacco, and Firearms, and the remaining items, including the jeans, blouse, and contraband, were placed in the Wichita Police Department's evidence room.

Although state authorities decided not to prosecute Mr. Primm for drug and gun possession, federal authorities, after nearly two and a half years, filed an indictment on February 9, 1995, charging him under 18 U.S.C. §§ 922(g), 924(a)(2), and 21 U.S.C. § 844. A few days before trial the parties discovered the evidence held in the Wichita evidence room had been destroyed three months earlier. The Wichita Police Department's property and evidence division policy calls for the property clerk to routinely purge unused evidence after two years to free up needed space. The administrative detective verified no state charges were pending against Mr. Primm and ordered the evidence destroyed.

The government proceeded to trial relying on the photographs, the firearm, the lab test reports, and the testimony of the police chemist and the arresting officers. The jury returned a guilty verdict on both counts. This appeal followed.

II.

Initially, Mr. Primm contends the preindictment delay violated his constitutional right to a speedy trial guaranteed by the Sixth Amendment. He claims the constitutional protection was triggered by his initial arrest on September 23, 1992, and the delay of

3

more than twenty-eight months between arrest and indictment warrants dismissal. We disagree.

The right to a speedy trial provided by the Sixth Amendment is not engaged until either a formal indictment or information is brought against a defendant or else actual restraints are imposed by arrest and holding to answer a criminal charge. *United States v. Marion*, 404 U.S. 307, 320 (1971). In *Marion*, the Court acknowledged a defendant need not await indictment, information, or other formal charges to invoke the speedy trial provision. It may commence as soon as the defendant has been continuously held in custody or on bail or otherwise held to answer for the crime ultimately charged. However, the Court specifically declined to extend the reach of the amendment "to the period prior to arrest." *Id.* at 321. Thus, even a lengthy preindictment delay is wholly irrelevant to the issue of whether a defendant's rights were violated under the Speedy Trial Clause of the Sixth Amendment. *United States v. Lovasco*, 431 U.S. 783, 788 (1977).

Mr. Primm's arrest on September 23, 1992, did not unleash the Sixth Amendment's speedy trial provision because his arrest was unrelated to the charges ultimately brought against him for firearm and drug possession. On the contrary, he was arrested on an outstanding warrant for a parole violation and remained in custody for approximately two months before being released. Although the search of his residence and subsequent discovery of the revolver and contraband occurred shortly after his arrest,

4

he was not arrested for his possession of those items.  In short, Mr. Primm was not restrained or otherwise held to answer for the crimes at issue until he was indicted on February 9, 1995.  Accordingly, his Sixth Amendment argument must fail.[1]

III.

Mr. Primm also asserts the twenty-eight month preindictment delay was excessive and deprived him of due process under the Fifth Amendment.  His objection to the preindictment delay was not raised before the district court.  Consequently, our review is limited to determining whether the delay constitutes plain error.  ***United States v. Williamson***, 53 F.3d 1500, 1521 (10th Cir.), ***cert. denied***, 116 S.Ct. 218 (1995).

The due process clause of the Fifth Amendment has only a "limited role to play in protecting against oppressive delay."  ***Lovasco***, 431 U.S. at 789.  Legislatively enacted statutes of limitations remain the primary guarantee against bringing overly stale criminal charges.  ***Id.***  We have held a preindictment delay is not a violation of the due process clause absent a showing of actual prejudice resulting from the delay, and evidence the delay was purposefully caused by the government to gain a tactical advantage or to harass

---

[1]Additionally, Mr. Primm's arrest was in response to a Kansas state parole offense. "[A] defendant's Sixth Amendment rights are not triggered by prior state arrest or indictment." ***United States v. Allen***, 986 F.2d 1354, 1356 (10th Cir. 1993). *See also* ***United States v. Mills***, 964 F.2d 1186, 1189-90 (D.C. Cir.) (stating the "undisputed rule that a *state* arrest does not trigger the Speedy Trial Act's clock, even if the arrest is for conduct that is the basis of a subsequent indictment for a federal offense."), ***cert. denied***, 506 U.S. 977 (1992).

the defendant.  *United States v. Engstrom*, 965 F.2d 836, 839 (10th Cir. 1992); *United States v. Comosona*, 848 F.2d 1110, 1113 (10th Cir. 1988).  The burden of proof of making this two-part showing lies squarely with the defendant.  *Engstrom*, 965 F.2d at 839.

Mr. Primm fails to meet his burden of proof on both of the required components.  First, he has failed to demonstrate any actual prejudice to his case resulting from the delay.  Mr. Primm's allegations of prejudice never extend beyond the realm of speculation.  He suggests the drug evidence may have proven exculpatory if he had been allowed an opportunity to perform his own independent tests on the substances.  He conjectures the jeans, used to suggest his ownership of the heroin, may not have fit him if he had been allowed the chance to try them on in front of the jury.  He alleges memory loss prevented a witness from recalling details helpful to his case and kept him from locating an additional witness who might have provided helpful testimony.  However, Mr. Primm fails to point to any specific prejudice the delay caused him in presenting his case.

> Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice for the purposes of impermissible preindictment delay; defendant must be able to show definite and not speculative prejudice, and in what specific manner missing witnesses would have aided his defense.

*United States v. Jenkins*, 701 F.2d 850, 855 (10th Cir. 1983).

Second, Mr. Primm fails to establish the preindictment delay was purposefully caused by the government to gain a tactical advantage or to harass.  In fact, he offers no

6

explanation for the government's decision to delay indictment.  There is no evidence in the record to suggest the government intentionally withheld its indictment of Mr. Primm to gain any specific tactical advantage over him.  In actuality, the decision to defer trial until after Kansas authorities had independently destroyed much of the evidence implicating Mr. Primm left the government at a distinct tactical disadvantage.  Because Mr. Primm's argument is deficient in both aspects necessary to establish a due process violation by preindictment delay, we conclude it does not rise to the level of constitutional plain error and reject his claim.

IV.

Finally, Mr. Primm argues the destruction of exculpatory evidence by Kansas authorities before trial was a violation of his due process rights under the Fourteenth Amendment.  He contends the destroyed contraband was exculpatory because an independent test on the substances may have yielded negative results.  He also claims the pair of men's jeans could have established a reasonable doubt as to his ownership of the drugs if he had been able to demonstrate to the jury the pants did not fit him.

In *Arizona v. Youngblood*, 488 U.S. 51 (1988), the Supreme Court addressed whether destruction of evidence by the prosecution amounts to a Fourteenth Amendment due process violation.  The Court first distinguished between "potentially useful" evidence and "material exculpatory" evidence.  Citing *Brady v. Maryland*, 373 U.S. 83 (1963), the Court explained good or bad faith by the State is irrelevant when the State

7

fails to disclose to the defendant material exculpatory evidence. *Youngblood*, 488 U.S. at 57. In contrast, however, the Court held "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58.

To establish whether evidence is material in the *Brady* sense, Mr. Primm must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Pedraza*, 27 F.3d 1515, 1527 (10th Cir.) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)), *cert. denied*, 115 S.Ct. 347 (1994). For example, if the seized substances had not tested positive for heroin and cocaine, or even if the government had failed to test the contraband before it was destroyed, it could be considered material exculpatory evidence. However, the Kansas police conducted field tests on the cocaine, and the lab tested both substances. The test results were conclusively positive for cocaine and heroin. The lab chemist who performed the tests testified at trial about the lab results and was available for cross-examination. The original reports were admitted into evidence. The destruction of the evidence merely prevented Mr. Primm from conducting his own independent test on the substances. Thus, the usefulness of the drug evidence to the defense was, at best, conjectural.

Similarly, the jeans were only potentially useful to Mr. Primm's case without providing a probable avenue for reversal. The photographs establish the size and

8

condition of the clothing, and the jury concluded Mr. Primm was the likely owner of the jeans. Whether a demonstration at trial would have proven otherwise is mere hypothesis.

Mr. Primm, therefore, must carry the burden of showing the Kansas police acted in bad faith when they destroyed the evidence. Yet, the record provides absolutely no evidence of foul play. Indeed, Mr. Primm's counsel acknowledged an absence of bad faith evidence when questioned on the subject at oral argument. We are left with no indication the officers were aware of the joint federal investigation, or purged the evidence for any reason other than to free up storage space.

To rule in favor of Mr. Primm, we would have to presume the Kansas police destroyed the evidence in bad faith to benefit the government's case. "The mere fact that the government controlled the evidence and failed to preserve it is by itself insufficient to establish bad faith." *United States v. Richard*, 969 F.2d 849, 853-54 (10th Cir.), *cert. denied*, 506 U.S. 887 (1992). The district court properly determined the evidence was not destroyed intentionally to prejudice Mr. Primm's defense at trial.

**AFFIRMED.**

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge

9