UNITED STATES of America,
Plaintiff–Appellee,

v.

Bernard COMOSONA, Jr.,
Defendant–Appellant.

No. 87–1710.

United States Court of Appeals,
Tenth Circuit.

June 9, 1988.

Thomas J. Clear, III of Clear & Clear, P.A., Albuquerque, N.M., for defendant-appellant.

Stephen R. Kotz, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., and Robert J. Gorence, Asst. U.S. Atty., on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and SETH and McKAY, Circuit Judges.

SETH, Circuit Judge.

Bernard Comosona, Jr. takes this appeal from a judgment of conviction which was entered after a jury found him guilty of voluntary manslaughter in violation of 18 U.S.C. §§ 1153 and 1111. Comosona has raised several points on appeal, but his argument centers on the trial court's denial of his pretrial motions to suppress statements he made when interrogated and motions to dismiss the indictment because of preindictment and prearraignment delay.

Comosona was charged by indictment with the murder of his grandfather, Ray Paylusi, who died as a result of a stab wound by a kitchen knife. The fatal wound was inflicted shortly after Mr. Paylusi and his wife returned to their home on the Zuni Indian Reservation. When they arrived at their house, they were met by Comosona and by Comosona's sister, Carol Martinez. Comosona and Martinez had been fighting during their grandparents' absence, and Martinez told Mr. Paylusi of the altercation whereupon he upbraided Comosona for fighting. Comosona walked into the house. Mr. Paylusi followed Comosona and while Mr. Paylusi's wife stopped in the front room, Mr. Paylusi joined Comosona in an adjoining room. Shortly thereafter, Mr. Paylusi was found lying on the floor of the adjoining room with the knife wound. Comosona was later found and arrested walking down a street in Zuni.

Prior to trial, Comosona moved to suppress statements which he gave to law enforcement officials on the afternoon of the day following the incident. The trial court denied the motion without making specific findings on the record and Comosona has appealed from this denial. In *United States v. Espinosa*, 771 F.2d 1382, 1407 (10th Cir.) (quoting *United States v. Cooper*, 733 F.2d 1360, 1364 (10th Cir.)), we held that:

"On review of the denial of the motions to suppress, we will accept the findings of fact made by the trial court unless clearly erroneous; if findings were not made, this court must still 'uphold the ruling if there is any reasonable view of the evidence to support it.' "

Since the Government prevailed on this suppression motion, we view the evidence adduced at the suppression hearing in the light most favorable to the Government. *See, e.g., United States v. Ellison*, 791 F.2d 821, 822 (10th Cir.). We have carefully reviewed the record of the suppression hearing and conclude that the evidence so viewed shows the following.

Upon arrest, Comosona was taken into custody at the Zuni tribal jail where he was interrogated by law enforcement officials the following afternoon. This was conducted by Special Agents Babcock and Coffman of the Federal Bureau of Investigation and Criminal Investigator Bowekety of the Zuni Police Department. At the beginning of the interview, Comosona was advised of his rights as required by *Miranda*, in both Zuni and English. Comosona stated that he understood his rights and he signed a

"Waiver of Rights" form which had been read to him in both Zuni and English.

During the ensuing interrogation Comosona admitted to throwing a knife at Mr. Paylusi. Before this admission could be reduced to a signed written statement however, Comosona asserted his right to counsel whereupon the interview was terminated. As the law enforcement officials were leaving the interview room, Agent Babcock handed Comosona a business card and invited Comosona to call him collect if he wished to speak further about the incident. Almost immediately Comosona stated that he wanted to continue the interview. When Agent Babcock readvised Comosona that he had a right to the advice of an attorney during interrogation, Comosona stated that he was aware of this right but that he desired to proceed with the interrogation unassisted by counsel.

During the minutes which followed, Comosona went into greater detail regarding the incident which culminated in Mr. Paylusi's death. Ultimately, Comosona's oral admissions were reduced to a written confession. Comosona reviewed this statement and signed it.

In this appeal the Government concedes that Comosona's statements were the product of a custodial interrogation and that the protections afforded by *Miranda* apply. The crux of the instant dispute is whether the statements given by Comosona *after* he had invoked his right to the assistance of counsel during the interrogation and then continued were admissible in the Government's case in chief.

In *Miranda*, the Supreme Court, of course, held that "[i]f the individual [being interrogated] states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694. This was reiterated, but with a significant qualification, in *Edwards v. Arizona*, 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378, where the Court held that "it is inconsistent with *Miranda* and its progeny for the authorities, *at their instance*, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." (Emphasis

added.) Thus, *Edwards* established that an accused's invocation of the right to counsel is not a bar to further interrogation as long as "the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 485, 101 S.Ct. at 1885. This principle was further elaborated upon in *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405, in which eight members of the Supreme Court agreed that a statement made by an accused during a custodial interrogation, after the accused has invoked his right to counsel, is admissible in the Government's case in chief if the accused initiates further conversation after the invocation *and* if the Government carries the burden of showing that the accused subsequently waived his Fifth Amendment right to the assistance of counsel.

■ Comosona argues that it was the law enforcement officials who continued after he invoked his right to counsel and he did not initiate further conversation. Specifically, Comosona contends that Agent Babcock's invitation to call him collect constituted impermissible "interrogation." The definition of the term "interrogation," for the purposes of *Miranda* analysis, was set forth by the Supreme Court in *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297:

"[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."

We cannot agree with Comosona that Agent Babcock should have known that giving Comosona his card and inviting him to call collect was "reasonably likely to elicit an incriminating response." Rather, we conclude that Agent Babcock acted in a manner "normally attendant to arrest and

custody" when he gave Comosona his card and invited him to call to discuss the incident further. We are mindful that Agent Babcock's intent is not determinative here, but it "may well have a bearing on whether the police should have known that their words or actions were reasonably likely to evoke an incriminating response." *Rhode Island v. Innis*, 446 U.S. at 302 n. 7, 100 S.Ct. at 1690 n. 7. Agent Babcock testified at the suppression hearing that he gave Comosona his card in case "he had any questions or ... wanted to initiate the interview later on, or wanted to advise his lawyer ... or ... his relatives who the agent was." Agent Babcock's practice was reasonable under the circumstances and we conclude that characterizing such a practice as "interrogation" would unduly hamper law enforcement officials in the routine aspects of their criminal investigations. The position and findings of the trial court were correct.

■ We further find that Comosona initiated further conversation with the law enforcement officials within the meaning of the *Edwards* decision when he asked to continue the interrogation without the assistance of counsel.

We further agree with the trial court that Comosona effectively waived his right to the assistance of counsel subsequent to his invocation of that right. In *Edwards*, the Supreme Court held that an effective waiver of counsel

> "must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'"

451 U.S. at 482, 101 S.Ct. at 1884 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461).

Looking at the evidence in the light most favorable to the Government, we conclude that Comosona gave two effective waivers of his right to counsel; first, when he signed the "Waiver of Rights" form and second, when he orally told the law enforcement officials that he wished to proceed with the interrogation without the assistance of counsel. As noted above, Comosona had been advised of his rights in both Zuni and English. The trial court found that he understood those rights and intended to waive them and found that Comosona initiated further conversation with the law enforcement officials after invoking his right to counsel and that Comosona made a knowing and intelligent waiver of his right to counsel. We agree with the findings.

The trial court denied Comosona's motion to dismiss the indictment because of preindictment and prearraignment delay. This is reviewed under the abuse of discretion standard. *United States v. Derr*, 726 F.2d 617, 619 (10th Cir.). Comosona was indicted eight months after the incident and was arraigned three months after the indictment was filed.

The Due Process Clause warrants dismissal of indictments for preindictment delay only in exceptional circumstances. In *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752, the Supreme Court held that

> "statutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide ' "the primary guarantee against bringing overly stale criminal charges." ' " (Citations omitted.)

We have interpreted the *Lovasco* holding to stand for the proposition that a defendant's Due Process rights are not offended absent "a showing of actual prejudice resulting from preindictment delay and that the delay was purposefully designed to gain tactical advantage or to harass...." *United States v. Padilla*, 819 F.2d 952, 962–63 (10th Cir.) (quoting *United States v. Jenkins*, 701 F.2d 850, 854 (10th Cir.)).

■ We elaborated on the type of prejudice which warrants dismissal of an indictment for preindictment delay in *Jenkins*:

> "Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice for the purposes of im-

permissible preindictment delay; defendant must be able to show definite and not speculative prejudice, and in what specific manner missing witnesses would have aided his defense."

701 F.2d at 855. Comosona alleges that he has suffered actual prejudice as a result of the preindictment delay because his memory of the incident had dimmed by the time of trial and because witnesses who would have been able to provide exculpatory testimony had disappeared. It is significant to our analysis that Comosona asserts that the "missing witnesses" would have been able to testify that Comosona was extremely drunk on the night of the criminal incident. Our review of the trial transcript indicates that the defendant himself, as well as two Government witnesses, testified at trial as to Comosona's drunkenness on the day of the criminal incident. Thus, the alleged missing testimony would have been merely cumulative.

We conclude that such allegations of prejudice are insufficient to establish actual prejudice under the Due Process Clause. We agree with the trial court's finding that Comosona's "allegations of actual prejudice are non-specific and speculative" and expand on that finding by holding that the absence of cumulative testimony cannot, as a matter of law, result in actual prejudice. Furthermore, we note, as did the trial court, that Comosona has not alleged that the Government designed the delay in order to gain a tactical advantage or to harass. Accordingly, the trial court did not abuse its discretion in denying the motion to dismiss the indictment for preindictment delay.

■ Neither do we find that the trial court abused its discretion in denying Comosona's motion to dismiss the indictment for prearraignment delay in violation of the Sixth Amendment right to a speedy trial. In *Barker v. Wingo*, 407 U.S. 514, 522, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101, the Supreme Court indicated the four factors which a trial court should consider in analyzing a motion to dismiss the indictment on Sixth Amendment speedy trial grounds: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the speedy trial right, and (4) prejudice to the defendant. The Supreme Court further held that "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* at 530, 92 S.Ct. at 2192.

Comosona asserts that the three month delay between the return of the indictment and his arraignment was presumptively prejudicial. We do not agree. Rather, we agree with the trial judge who found that the "post-indictment delay of three months is insufficient to trigger a presumption of prejudice." A delay of three months between indictment and arraignment is not so opprobrious as to offend the Sixth Amendment right to a speedy trial. Accordingly, we need not go further in our review of the denial of Comosona's motion to dismiss the indictment for prearraignment delay.

Nevertheless, we note that the reason for the delay was partly attributable to the need of the Government to obtain an Order for Writ of Habeas Corpus Ad Prosequendum prior to arraignment since Comosona was incarcerated at the Zuni tribal jail for tribal offenses. Furthermore, we note that Comosona was not prejudiced by the prearraignment delay. As we held above, Comosona's allegations of inability to prepare for trial as a result of the delay are conclusory and speculative. Moreover, since Comosona was incarcerated for tribal offenses at the time the indictment was returned against him, he cannot argue that the prearraignment delay resulted in oppressive pretrial incarceration. The trial court's denial of Comosona's motion to dismiss the indictment for prearraignment delay is affirmed.

■ Comosona also argues that the trial court erred in refusing to instruct the jury on the lesser included offense of involuntary manslaughter. In *United States v. Chapman*, 615 F.2d 1294, 1299 (10th Cir.), we held that "a defendant is entitled to adequate instructions on his defense, provided there is evidence before the jury reasonably supporting such a theory." We

further held that "[t]he decision of whether there is enough evidence to justify a lesser included offense charge rests within the sound discretion of the trial judge." *Id.* at 1298.

> Involuntary manslaughter is defined as "the unlawful killing of a human being without malice ... [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death."

18 U.S.C. § 1112(a). The evidence adduced at trial led to the inference that Mr. Paylusi's death was caused by an injury which was inflicted when Comosona threw a knife at him. In denying Comosona's requested instruction on involuntary manslaughter, the trial court stated that "[t]here's nothing lawful about the act" of throwing a knife at somebody. We agree with this rather broad statement in the context of the instant case. We further note that assault with a dangerous weapon, which includes an assault with a knife, *see United States v. Yazzie*, 660 F.2d 422, 430 (10th Cir.), is a felony. 18 U.S.C. § 113(c). Since a juror could not rationally conclude that Comosona was guilty of involuntary manslaughter, given the evidence adduced at trial, the trial judge did not abuse his discretion in refusing to give the requested instruction. *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed. 2d 844.

■ Lastly, we address Comosona's contention that the trial judge committed reversible error in refusing to order the production of certain statements pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. Prior to trial, Comosona made a motion for the production of all statements "which might benefit the defense." The trial court granted this motion.

During trial, the defense learned that James Awelgate, Comosona's uncle, who may have been the only eyewitness to the incident, had made three statements to law enforcement officials, none of which had been produced prior to trial. Upon Como-

sona's oral motion, the trial court conducted an *in camera* review of the three statements and determined that none was exculpatory. Comosona's theory seems to be that even though none of the statements was exculpatory, the discrepancies contained in the statements could have given rise to an inference that James Awelgate was responsible for Mr. Paylusi's death. We decline to extend the scope of the *Brady* decision so far. The Government has no obligation to disclose possible theories of the defense to a defendant. If a statement does not contain any expressly exculpatory material, the Government need not produce that statement to the defense. To hold otherwise would impose an insuperable burden on the Government to determine what facially non-exculpatory evidence might possibly be favorable to the accused by inferential reasoning. We are confident that the Supreme Court did not intend the *Brady* holding to sweep so broadly. Accordingly, we find that the trial court did not err in refusing to order the production of Awelgate's statements.

Wherefore, we conclude that the judgment of conviction entered against Comosona after the jury trial should be affirmed, and it is AFFIRMED.