**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert H. DeMAIO, Defendant–Appellant.**

**No. 93–2795.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1994.

Decided June 24, 1994.

---

John Earl Dowd, Donna Eide (argued), Office of U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

Richard Kammen (argued), James T. Flanigan, McClure, McClure & Kammen, Indianapolis, IN, for defendant-appellant.

Before CUMMINGS, KANNE, and ROVNER, Circuit Judges.

KANNE, Circuit Judge.

On July 6, 1992, Robert DeMaio was arrested for possession with intent to distribute marijuana in a quantity of one hundred kilograms or more, and conspiracy to do the same. Prior to his arrest, DeMaio and Leonard Hayes delivered approximately one hundred pounds of marijuana to a confidential informant (CI). The CI saw another one hundred pounds of marijuana in the vehicle in which DeMaio and Haynes were riding. At the time the marijuana was delivered, the CI paid Hayes approximately $70,000, leaving a remaining balance of $58,000. The CI subsequently paid DeMaio approximately $19,000, leaving a remaining balance of approximately $39,000. Thereafter, while under surveillance by law enforcement officers, the CI met with DeMaio. The CI handed DeMaio approximately $40,000 as payment for the previously delivered marijuana. DeMaio was then arrested. Law enforcement officers searched DeMaio's car and found 363 pounds of marijuana, which they seized.

DeMaio was detained at the Marion County Jail in Indianapolis, Indiana following his arrest. On July 22, 1992, a federal grand jury returned a two count[1] indictment against DeMaio. At his initial appearance, DeMaio filed an oral motion requesting that he be temporarily transferred from the Marion County Jail so that he could be examined and treated for various medical problems. The Magistrate granted DeMaio's motion,

---

1. Count one charged DeMaio with conspiracy to possess with intent to distribute 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count two charged DeMaio with pos-session with intent to distribute over 100 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

and he was transferred to Wishard Hospital for medical examination and treatment.

On September 18, 1992, DeMaio and the government filed an "Amended Joint Petition for Modification of Conditions of Detention." The Petition requested that DeMaio be released on bond from the Marion County Jail on the condition that he report to the Volunteers of America Residential Work Release Center ("VOA"). According to the petition, DeMaio's transfer was necessary because of his health and "other considerations." The parties agreed that DeMaio was to remain at the VOA at all times, i.e., he was not to be given a pass for any purpose. The parties specifically agreed to let the court decide whether DeMaio was to receive credit against his possible sentence for the time he spent at the VOA. The district court granted the parties' motion on September 22, 1992. Thereafter, the Magistrate modified the order to allow DeMaio to leave the VOA to obtain medical treatment for injuries he suffered as the result of a fall at the VOA.

On November 12, 1992, a plea agreement was filed in which DeMaio agreed to plead guilty to both counts of the indictment. Each count carried a statutory mandatory minimum sentence of 60 months imprisonment. Pursuant to the plea agreement, DeMaio agreed to cooperate with the government. The government agreed to file a motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, stating that DeMaio had provided substantial assistance to the government. The parties specifically recognized that the government's motion would allow the court to give DeMaio a lesser sentence than the statutory mandatory minimum. On the same day, the district court accepted the plea agreement.

Consistent with the plea agreement, the government filed a motion requesting the district court to depart downward one offense level to reflect DeMaio's substantial assistance to the government. In his pre-sentence memorandum and at the initial sentencing hearing, DeMaio asked the district court to further adjust or depart downward from the mandatory minimum sentence based on several Guidelines provisions. First, he argued that the court should give him a downward adjustment pursuant to section 3B1.2 because his role in the offense was minor or minimal. Next, he contended that the court should depart downward because of his age and poor health pursuant to section 5H1.1 and section 5H1.4, respectively. Finally, DeMaio requested a downward departure under section 5K2.0 to reflect the time he served at the VOA. DeMaio indicated that a downward departure was necessary because under the policies of the Bureau of Prisons he would not receive credit against his sentence for the time he served at the VOA.

The court rejected DeMaio's additional grounds for adjustment or departure. According to the district court, this court's opinion in *United States v. Thomas*, 930 F.2d 526 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991) ("*Thomas I*") prohibits a district court from departing below a statutory mandatory minimum sentence on any other basis than the defendant's substantial assistance to the government.

In calculating DeMaio's sentence, the court determined that because DeMaio pled guilty to an offense requiring a mandatory minimum sentence of sixty months, it was required to start at an offense level that included the mandatory minimum sentence. DeMaio's criminal history category was I, thus the appropriate offense level was twenty-four. The court found that DeMaio was entitled to a four offense level downward departure to reflect his substantial assistance to the government.[2] Consequently, the appropriate offense level became twenty, which provided a sentencing range of thirty-three to forty-one months. The court sentenced DeMaio to thirty-three months imprison-

---

**2.** The government recommended a one offense level downward departure to reflect DeMaio's substantial assistance. However, the district court rejected the government's recommendation and gave DeMaio a four offense level downward departure. The Application Note to section 5K1.1 provides that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain." Despite this Application Note, the government does not challenge the district court's downward departure determination.

ment, and further ordered that he be placed on supervised release for four years following release from imprisonment. DeMaio was also ordered to pay a $100 special assessment fee.

## Discussion

■ In his initial appellate brief, DeMaio argued that the district court erred in refusing to consider other grounds for departure in addition to section 5K1.1. However, at oral argument, DeMaio's attorney conceded that this court's decision in *United States v. Thomas*, 11 F.3d 732 (7th Cir.1993) *("Thomas II")*, conclusively establishes what we indicated in *Thomas I*—that the district court may only depart below a statutory mandatory minimum sentence to reflect a defendant's substantial assistance to the authorities. We made explicit in *Thomas II*, that once the government files a motion pursuant to 18 U.S.C. § 3553(e), the court may not depart below the mandatory minimum sentence on any other ground except the defendant's substantial assistance to the authorities.

■ DeMaio also acknowledges that, absent a downward departure, he will not receive credit against his sentence for the time he served at the VOA. In *Ramsey v. Brennan*, 878 F.2d 995 (7th Cir.1989), we found that a prisoner was not entitled to credit against his sentence for time spent in a halfway house ("residential community center") awaiting trial. At the time *Ramsey* was decided, 18 U.S.C. § 3568 provided that the "Attorney General shall give any [person sentenced to prison] credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed." *Id.* at 996. In interpreting the word "custody," we gave deference to a Bureau of Prisons' policy statement indicating that "[t]ime spent in residence in a residential community center ... as a condition of bail or bond ... is not creditable as jail time since the degree of restraint provided by the residence in a community center is not sufficient restraint to constitute custody within the meaning or intent of 18 U.S.C. § 3568." *Id.* Congress subsequently replaced 18 U.S.C. § 3568 with 18 U.S.C. § 3585. The only significant change is that the new statute uses the term "official detention" instead of "custody." Nonetheless, at least one circuit court has found that "[t]here is no indication that Congress intended to change the application of the statute for purposes of granting credit on a prisoner's sentence." *Moreland v. United States*, 968 F.2d 655, 657 n. 6 (8th Cir.) (en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 675, 121 L.Ed.2d 598 (1992). *Cf. United States v. Brumbaugh*, 909 F.2d 289 (7th Cir. 1990) (holding that Congress did not intend to relieve the Attorney General of the duty to compute credit for time served when it replaced section 3568 with section 3585, even though it removed an explicit reference to the Attorney General). Thus, taken together, *Ramsey* and *Thomas II* make it clear that the only way DeMaio can receive credit for the time he served at the VOA is through a downward departure for substantial assistance to the authorities.

■ Accordingly, DeMaio now argues that he was entitled to an additional downward departure under section 5K1.1, to reflect the time he spent at the VOA. According to DeMaio, he provided the government with a benefit by being detained at the VOA instead of the Marion County Jail. In his plea agreement, DeMaio agreed to provide testimony against Leonard Hayes at trial. DeMaio contends that his transfer to the VOA for medical treatment benefitted the government because he could not testify against Hayes if, because of worsening medical problems, he were either dead or too ill to do so.

DeMaio makes this creative argument on appeal; however, he did not make it to the district court. DeMaio argued before the district court that he was entitled to a downward departure under U.S.S.G. § 5K2.0 because of the uncredited time he spent at the VOA. However, DeMaio never suggested that the district court consider his uncredited VOA time under the rubric of "substantial assistance." He has thus waived this argument. *See, e.g., United States v. Harty*, 930 F.2d 1257, 1261 (7th Cir.1991) ("This court has repeatedly stated that arguments raised for the first time on appeal are waived.") (citation omitted).

■ Even if we were to consider DeMaio's argument on the merits, we cannot say that he provided substantial assistance to the government by being detained at the VOA rather than the Marion County Jail. DeMaio is of course correct in contending that he could not testify against Hayes if he were gravely ill or dead. However, there is no evidence in the record to indicate that DeMaio's health problems were so serious that he would have been too ill to testify against Hayes if he had been detained at the Marion County Jail during the entire pre-sentence period.

DeMaio has several different medical problems, including chronic vertigo and loss of hearing in his left ear. Despite these problems, one of DeMaio's doctors indicated that DeMaio could "probably perform a full day of activities if he remains seated and relatively stationary." Thus, DeMaio's health problems were not so serious that his continued detention in the Marion County Jail was life-threatening. Moreover, there is no indication that DeMaio received better medical care at the VOA than he would have received at the Marion County Jail. DeMaio had previously been transferred from the Marion County Jail to Wishard Hospital for medical treatment. It is safe to assume that a similar transfer would have occurred had DeMaio developed further medical problems requiring treatment.

### Conclusion

For the foregoing reasons, the decision of the district court is AFFIRMED.

ILANA DIAMOND ROVNER, Circuit Judge, concurring in part and concurring in the judgment.

I agree with the majority that Mr. De-Maio's confinement at the VOA did not supply a basis for a further downward departure under section 5K1.1 of the Guidelines. I am not convinced, however, that the ten months Mr. DeMaio spent at this facility prior to sentencing cannot be credited as time spent in "official detention" for purposes of 18 U.S.C. § 3585(b). *See ante* at 591. Mr. DeMaio was ordered detained pending trial; and his transfer to the VOA represented a modification of that detention based, in some part, on his medical needs. Under these circumstances, our opinion in *Ramsey v. Brennan*, 878 F.2d 995 (7th Cir.1989), may not be controlling, particularly in light of the revision of the relevant statutory language. *See generally Moreland v. United States*, 968 F.2d 655, 662–63 (8th Cir.) (en banc) (Loken, J., concurring), *cert. denied*, —— U.S. ——, 113 S.Ct. 675, 121 L.Ed.2d 598 (1992); *see also Koray v. Sizer*, 21 F.3d 558, 561–66 (3d Cir.1994). The majority suggests that Mr. DeMaio's health problems were not so serious that his transfer to the VOA was really necessary. Yet, the petition for this transfer, in which the government joined, specifically cited his health as a reason for the transfer (Appellant's Suppl.App. at 9); and the probation officer's presentence report indicated that Mr. DeMaio had become "a physical risk" at the Marion County Jail "due to problems balancing himself and even with passing out" (*id.* at 36). Absent a contrary finding by the district court, then, I would accept the notion that detention at the VOA was indeed necessitated by Mr. DeMaio's physical ailments.

At this juncture, we are only reviewing the sentence imposed on Mr. DeMaio, not the credit the Bureau of Prisons might or might not give him for the time he spent at the VOA. But assuming that the BOP might, in fact, deny Mr. DeMaio credit for this period, I would not deem the result of a challenge to that decision to be a foregone conclusion.