UNITED STATES of America,
Plaintiff–Appellee,

v.

Brian K. McMUTUARY and Dante A.
Grier, Defendants–Appellants.

Nos. 98–1150, 98–1151.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 11, 1999.

Decided May 5, 1999.

Order Granting Rehearing July 20, 1999.

Joel D. Bertocchi, Solicitor General (argued), Office of the Attorney General, Chicago, IL, for Plaintiff–Appellee in No. 98–1150.

Jacqueline Ross, Office of the United States Attorney, Criminal division, Chicago, IL, for Plaintiff–Appellee in No. 98–1151.

Terence MacCarthy, Office of the Federal Defender Program, Chicago, IL, for Defendant–Appellant in No. 98–1150.

Matthew F. Kennelly, Terence H. Campbell (argued), Cotsirilos, Stephenson,

Tighe & Streicker, Chicago, IL, for Defendant–Appellant in No. 98–1151.

Before FAIRCHILD, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Brian McMutuary, Dante Grier, and Steven Brown participated in the armed robbery of Southwest Financial Bank in Chicago, Illinois. A superseding indictment charged each with conspiracy to commit armed bank robbery, armed bank robbery, and use of and carrying a firearm in connection with a crime of violence. McMutuary was also charged with one count of perjury. Brown entered a plea of guilty on all counts of the original indictment (which contained the same charges with respect to Brown as the superseding indictment) pursuant to a written plea agreement in which he agreed to provide assistance to the government. In considering Brown's sentence, the district court departed markedly downward on the grounds of the substantial assistance provided to the government by Brown and his family circumstances and sentenced Brown to a period of one year home confinement followed by a period of probation. After Brown pleaded guilty, a jury convicted McMutuary and Grier on all counts of the superseding indictment. The district court sentenced McMutuary to 195 months in prison and Grier to 138 months in prison.

On appeal, Grier argues that the district court erred by denying his motion to dismiss the indictment for prejudicial pre-indictment delay. McMutuary and Grier together assert that the district court erred in refusing to consider a downward departure from their United States Sentencing Guidelines ranges based on a perceived unjustified disparity between their sentences and the sentence imposed on Brown. Although we reject Grier's argument regarding the pre-indictment delay, we agree with McMutuary's and Grier's argument that an unjustified disparity existed between the sentence imposed on Brown and the sentences imposed on McMutuary and Grier that should have

been considered by the district court at the time of their sentencing. Accordingly, we affirm, in part, reverse, in part, and remand for reconsideration of the sentences imposed on McMutuary and Grier.

## I. HISTORY

On February 18, 1992, Brown entered Southwest Financial Bank, where McMutuary worked as a coin and currency teller, and presented a note to the bank's vault custodian demanding to be shown the location of the bank's safe deposit boxes. To ensure the bank took his demand seriously, Brown showed the custodian a handgun, which he had placed in the waistband of his pants. The custodian led Brown to the vault where McMutuary was waiting. Brown then pulled the gun from his waistband and instructed the custodian and McMutuary to fill a duffle bag with money. Once the bag was filled with money, Brown told McMutuary to bind the custodian with tape. To make it appear that McMutuary was not involved in the robbery, Brown did the same to McMutuary before exiting the bank.

Events before and after the robbery clearly established that McMutuary, Grier, and Brown acted in concert in robbing the bank. On the day before the robbery, Grier approached Brown and inquired about his interest in participating in a bank robbery. Grier explained that he and McMutuary intended to rob the bank where McMutuary worked and McMutuary's participation in the scheme would facilitate the robbery. Grier would simply enter the bank and McMutuary would fill his bag with money. Based on Grier's assurances regarding the manner in which the plan would be carried out, Brown agreed to participate in the robbery by acting as the getaway driver.

On the day of the robbery, Brown and Grier parked McMutuary's car across the street from the bank and waited for McMutuary to contact them. After receiving two pages from McMutuary, Grier entered the bank. He quickly returned,

informing Brown that a security guard deterred him from following through with the plan. A few minutes later, Brown entered the bank and once he was satisfied that the security guard was not at his post, presented a demand note to the vault custodian. Brown left the bank upon completion of the robbery, placed the money in the trunk of McMutuary's car, and Grier and Brown drove off. Two days later, McMutuary, Brown, and Grier met at a nearby hotel and split the money.

During the investigation conducted by the Federal Bureau of Investigation, local authorities, and a federal grand jury, McMutuary and Grier told conflicting stories regarding their knowledge of and involvement in the robbery. Eventually, the two recanted portions of their stories. Based, in part, on the grand jury testimony of McMutuary and Grier and their interviews with authorities, a federal grand jury returned an indictment charging McMutuary and Brown with conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371, armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and use of and carrying a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c). Additionally, McMutuary was indicted on a single charge of perjury. A superseding indictment was subsequently returned by the grand jury charging McMutuary and Brown with the same crimes and also charging Grier with conspiracy to commit armed robbery, armed robbery, and use of and carrying a firearm in connection with a crime of violence.

Brown entered a plea of guilty on all counts of the original indictment pursuant to a written plea agreement in which he agreed to cooperate with the government. McMutuary and Grier proceeded to trial after the district court denied Grier's motion to dismiss the indictment based on a claim of prejudicial preindictment delay. The jury convicted both McMutuary and Grier on all counts.

A straightforward application of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") to Brown's conviction placed Brown in a sentencing range of 117 to 131 months—fifty-seven to seventy-one months for the robbery and conspiracy charges, combined with a consecutive sixty month mandatory minimum sentence for the violation of § 924(c). In exchange for Brown's cooperation, the government specified in the plea agreement that, at the time of Brown's sentencing, it would file a motion pursuant to U.S.S.G. § 5K1.1, requesting a downward departure from the applicable Guidelines range and the statutory minimum sentence to a term of imprisonment one-third lower than the combined term required by the Guidelines range for the conspiracy and armed robbery charges and the additional term required by his plea of guilty to the § 924(c) charge.

Brown moved for an additional downward departure based on extraordinary family circumstances. At his sentencing hearing, members of Brown's family testified in support of his claim that he was needed at home to care for his elderly and ill parents and his eleven year-old niece. Although the government opposed Brown's motion, the government nevertheless moved for the downward departure as agreed upon in Brown's plea agreement. Upon consideration of the motions made by both Brown and the government, the district court departed downward fourteen offense levels and sentenced Brown to twelve months home detention followed by a period of probation. When imposing that sentence, the court cited both Brown's cooperation with the government and his family circumstances as grounds for the departure, but did not specifically assign either ground to any aspect of the departure.

Prior to sentencing, McMutuary and Grier moved for downward departures based on a perceived disparity between Brown's sentence and the sentences called for under the Guidelines ranges applicable to them. The district court denied this motion, reasoning that "the only way [the

court] could grant your motion ... would be to say that I granted an improper departure [with respect to Brown], and I do not believe that I did." Although the court rejected McMutuary's and Grier's requests for downward departures, the district court sentenced them to the lowest sentences available under the Guidelines ranges for the conspiracy and armed robbery offenses combined with the required consecutive sixty month sentence for the violation of § 924(c). The district court sentenced Grier to a term of 138 months in prison. Because of an enhancement for his perjury conviction, McMutuary received a term of imprisonment of 195 months. Grier now appeals the denial of the motion to dismiss the indictment based on prejudicial preindictment delay, and McMutuary and Grier both appeal the sentences imposed on them by the district court.

## II. ANALYSIS

### A. Preindictment Delay

Grier was first named as a defendant in the superseding indictment returned by the grand jury on February 11, 1997—nearly five years after the robbery. Grier claims that the government's delay in prosecuting him caused him actual and substantial prejudice by severely hampering his ability to defend himself against the charges contained in the superseding indictment. Grier's claim of actual and substantial prejudice is predicated upon his assertion that he was unable to present the testimony of a material witness who died during the period of the government's alleged delay. Furthermore, Grier submits that the prejudice he suffered was not outweighed by the government's proffered justification for its delay. Accordingly, Grier contends that the district court erred in denying his motion to dismiss the indictment based on preindictment delay. We review a district court's decision to deny a motion to dismiss an indictment for prosecutorial delay for an abuse of discretion. *See United States v. Spears*, 159 F.3d 1081, 1084 (7th Cir.1998); *United States v. Pardue*, 134 F.3d 1316, 1319 (7th Cir.1998).

A defendant's primary safeguard against unreasonable prosecutorial delay is derived from the applicable statute of limitations. *See Pardue*, 134 F.3d at 1319. However, "we have also noted that the Fifth Amendment's due process clause plays a limited role in assuring that the government does not subject a defendant to oppressive delay." *Spears*, 159 F.3d at 1084. In order to establish that a preindictment delay violated the Due Process Clause, a defendant must demonstrate that the delay caused actual and substantial prejudice to his right to a fair trial. *See United States v. Sowa*, 34 F.3d 447, 450 (7th Cir.1994). A defendant's burden to show actual and substantial prejudice is an exacting one; the showing must rest upon more than mere speculative harm. *See United States v. Canoy*, 38 F.3d 893, 902 (7th Cir.1994). The defendant's allegations of actual and substantial prejudice must be "specific, concrete, and supported by evidence." *Sowa*, 34 F.3d at 450 (quoting *Pharm v. Hatcher*, 984 F.2d 783, 787 (7th Cir.1993)); *see also United States v. Koller*, 956 F.2d 1408, 1415 (7th Cir.1992). If the defendant succeeds in showing prejudice, the burden shifts to the government "[to] show that the purpose of the delay was not to gain a tactical advantage over the defendant or for some other impermissible reason." *Spears*, 159 F.3d at 1084–85; *see also Sowa*, 34 F.3d at 451.

As stated, Grier's claim of actual and substantial prejudice is related entirely to his inability to call a single witness at trial. Grier contends that the testimony of his aunt, Margaret Blackman, was critical to his defense, but that he was unable to present this testimony because she died prior to the return of Grier's indictment by the grand jury. According to the affidavit of Blackman's daughter, Cassandra Blackman, had Margaret Blackman been called to testify at trial, she would have testified that she lived with Grier and that he did not leave their residence on the day of the robbery. Therefore, this testimony would have provided Grier with an alibi defense.

■ Although the loss of a vital defense witness may satisfy a defendant's burden to demonstrate prejudice, *see Pardue*, 134 F.3d at 1319, we do not conclude that Grier suffered actual and substantial prejudice as a result of his inability to call Margaret Blackman as a witness in the present case. In light of other testimony offered at trial on Grier's behalf, it would be difficult to characterize Margaret Blackman as a "vital defense witness." Her testimony would have been largely cumulative of the testimony offered by Cassandra Blackman, who testified that she, like Margaret Blackman, lived with Grier, and that he was at home during the entire day of the robbery. The testimony of Margaret Blackman would have simply corroborated the alibi defense ultimately offered by Cassandra Blackman. As we have stated, "the absence of cumulative testimony cannot, as a matter of law, result in actual prejudice." *Spears*, 159 F.3d at 1085–86 (quoting *United States v. Comosona*, 848 F.2d 1110, 1114 (10th Cir. 1988)). And, to the extent that the jury may have viewed Cassandra Blackman's testimony as biased or unworthy of credence because she was a member of Grier's family, Margaret Blackman's testimony would have done little to cure these perceptions. Accordingly, Grier failed to demonstrate that he suffered actual and substantial prejudice as a result of the pre-indictment delay.

We recognize in passing that even if we were to conclude that Grier suffered actual and substantial prejudice, the government offered a credible explanation for the delayed filing of the indictment that would not be outweighed by the prejudice claimed by Grier. The government informed the district court that the timing of the indictment was designed to permit the pursuit of evidence that would corroborate the information provided to the government by Brown after he implicated his co-defendants. The government explained that it was necessary to obtain and analyze bank records, hotel records, credit histories, and employment histories, among other evidence. The timing of the indictment was further necessitated in order to provide the government with an opportunity to pursue evidence of the defendants' use of the proceeds of the robbery. Finally, it is also worth noting that there has been no showing that the explanation offered by the government was pretextual. Grier has pointed to no evidence in the record to suggest that the government even knew of Margaret Blackman's existence or her health condition. The cause of the delay can only be characterized as investigatory in nature, *see Sowa*, 34 F.3d at 451, and in such cases, we will not find a due process violation.

## B. Sentencing Disparities

■ McMutuary and Grier claim that the district court erred in refusing to consider a disparity between Brown's sentence and their own sentences. Stripped to its barest form, their argument centers on their contention that the disparity between the sentence imposed on Brown and their own sentences cannot be justified under a proper application of the Guidelines. For this reason, the defendants claim that the district court should have considered this unjustified disparity in deciding whether to depart from the applicable Guideline range in imposing their sentences. We agree.

■ Typically, we review decisions regarding departures from the applicable Guidelines range for an abuse of discretion. *See United States v. Gonzalez–Portillo*, 121 F.3d 1122, 1123 (7th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 720, 139 L.Ed.2d 660 (1998). This standard applies "to both factual determinations and ... 'review to determine that the discretion was not guided by erroneous legal conclusions.'" *Id.* at 1124 (quoting *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). In applying this standard, it is important to recall that "whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of this point" because

"[a] district court by definition abuses its discretion when it makes an error of law." *Koon,* 518 U.S. at 100, 116 S.Ct. 2035.

In order to view the defendants' argument in its proper light, we must first review the Supreme Court's holding in *Koon* and our own holding in *United States v. Meza,* 127 F.3d 545, 550 (7th Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 1103, 140 L.Ed.2d 157 (1998). The Supreme Court explained in *Koon* that the Sentencing Commission intended "the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." 518 U.S. at 93, 116 S.Ct. 2035 (quoting U.S.S.G. ch. 1., pt. A, intro. cmt. 4(b) (1995)). In general, a court must impose a sentence within the applicable Guidelines range. However, the Court recognized that in promulgating the Guidelines, the Sentencing Commission "did not adequately take into account cases that are, for one reason or another, 'unusual,'" *id.,* and, thus, outside the heartland. In such atypical cases, the sentencing court may consider whether particular factors in the case warrant a departure from the applicable Guidelines range. *See also Koon,* 518 U.S. at 94, 116 S.Ct. 2035 ("Atypical cases were not 'adequately taken into consideration,' and factors that may make a case atypical provide potential bases for departure."). In sum, "before a district court is permitted to depart in a given case, certain features of the case must be found 'unusual' enough for it to fall outside the 'heartland' of cases covered in the applicable guideline." *United States v. Leahy,* 169 F.3d 433, 440 (7th Cir.1999).

The Guidelines identify relatively few factors that district courts are prohibited from considering in determining what sen-

tence to impose upon a particular defendant.[1] District courts are otherwise free to depart from the applicable Guidelines range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). In *Koon,* the Supreme Court recognized that a sentencing court must necessarily make two inquiries in determining whether a specific factor can be an appropriate basis for departure. The sentencing court must first determine "whether the [Sentencing] Commission has proscribed, as a categorical matter, consideration of the factor." 518 U.S. at 109, 116 S.Ct. 2035. If this question is answered in the negative, "the sentencing court must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." *Id.*

In *Meza,* we considered whether, in light of *Koon,* a district court could rely on a disparity between the sentences of co-conspirators in order to justify a departure from a Guidelines range not subject to a statutory minimum. At the time of sentencing, the defendant in *Meza* moved for a downward departure based on a perceived disparity between the sentence called for under the Guidelines in his case and the sentences previously imposed upon his co-conspirators. They had received downward departures pursuant to U.S.S.G. § 5K1.1 for cooperating with the government. Although the defendant in *Meza* chose not to cooperate with the government, he still believed a downward departure was nevertheless warranted in his case. The defendant argued that the Su-

---

1. The Sentencing Commission delineated four categories of sentencing factors to assist district courts in determining whether a particular case is atypical: forbidden, encouraged, discouraged, and unmentioned. Among the categories of factors, only the factors labeled as "forbidden" may never render a case atypical and provide the basis for departure from a sentencing range. These factors include race,

sex, national origin, creed, religion, socioeconomic status, physical conditions, such as drug or alcohol dependence, and economic hardship. *See* U.S.S.G. §§ 5H1.10, 5H1.4, 5K2.12. As conceded by the parties in *Meza* and discussed at greater length in this opinion, a sentencing disparity among co-defendants falls within the "unmentioned" category of sentencing factors.

preme Court's holding in *Koon* permitted a district court to consider as a potential basis for departure any aspect of the case that had not been enumerated specifically by the Sentencing Commission as a forbidden ground for departure. Because the Sentencing Commission has not proscribed any consideration of sentencing disparities as a categorical matter, the defendant argued that it would be improper for a court to preclude all consideration of sentencing disparities. *Meza*, 127 F.3d at 548.

■ In imposing a sentence upon a defendant, the sentencing court should consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). With this consideration in mind, we divided our analysis in *Meza* between "justified" and "unjustified" sentencing disparities. We described a justi-

fied disparity as one resulting from a proper application of the Guidelines to the particular circumstances of a case. We concluded that justified disparities could never serve as a basis for a departure from the Guidelines sentencing range. *Meza*, 127 F.3d at 549–50. This conclusion in no way conflicted with the prohibition against across-the-board acceptance or rejection of a factor by a sentencing court recognized in *Koon*. 518 U.S. at 106–07, 116 S.Ct. 2035.[2] A factor may only be considered as a basis for departure if it has not been adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. See 18 U.S.C. § 3553(b). It is clear that the Sentencing Commission adequately considered justifiable disparities between sentences "as it is the Guidelines that produce the disparity." *Meza*, 127 F.3d at 550.[3]

2. The Court explained that "for the courts to conclude a factor must not be considered under any circumstances would be to transgress the policymaking authority vested in the Commission." *Koon*, 518 U.S. at 106–07, 116 S.Ct. 2035.

3. In *Meza*, we identified several examples of how a proper application of the Guidelines could create a sentencing disparity:

18 U.S.C. § 3553(e) provides a court with "authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e); *see also* 1994 U.S.S.G. § 5K1.1 (incorporating this authority into the Guidelines). Also under § 6B1.2 and Fed. R.Crim.P. 11(e)(1), a court may accept a plea agreement that includes the dismissal of charges or an agreement not to pursue potential charges if "the remaining charges adequately reflect the seriousness of the actual offense behavior" and "accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines." 1994 U.S.S.G. § 6B1.2; *see also United States v. Maden*, 114 F.3d 155, 159 (10th Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 226, 139 L.Ed.2d 158 (1997) (reversing departure downward for perceived disparity between codefendant who accepted plea agreement and one who did not). In these examples, a defendant's substantial

assistance to the government and a defendant's acceptance of a plea agreement are the mitigating sentencing factors, and any resulting disparity between the sentences of the coconspirators is the result of the application of these factors.... Justified disparities like these, therefore, can never be a basis for departure from the Sentencing Guidelines as it is the Guidelines that produce the disparity.

127 F.3d at 549–50. It is clear from the examples set forth in *Meza* that the Commission contemplated that certain disparities in sentencing between co-defendants or coconspirators could result from a proper application from the Guidelines. Therefore, justified disparities may never serve as a basis for departure. *See also United States v. Gallegos*, 129 F.3d 1140, 1144 (10th Cir.1997) ("[A] departure based on a disparity between codefendants is not justified when sentences are dissimilar because of a plea bargain."); *United States v. Joyner*, 924 F.2d 454, 460–61 (2d Cir.1991) ("To reduce the sentence by a departure because the judge believes that the applicable range punishes the defendant too severely compared to a co-defendant creates a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country."). As the Fourth Circuit has also explained:

To base a defendant's sentence on a coconspirator's sentence is a short-sighted approach which ignores the Guidelines' attempt to eliminate unwarranted sentencing

In contrast to our analysis of justified disparities, we concluded that an unjustified disparity could potentially serve as a factor to consider in determining whether to depart from the applicable Guidelines range. *Meza*, 127 F.3d at 550. We explained:

> An unjustified disparity is one that does not result from a proper application of the Guidelines. In other words, it is a disparity in sentences that cannot be explained by a comparison of each defendant against the Guidelines as a set of rules.

*Id.* Thus, the central question becomes whether the particular sentencing disparity at issue is justified: "If the disparity between sentences is the justified result of a proper application of the Guidelines to the particular circumstances of that case, then it is not a valid basis for departure from the Guidelines' sentencing range." *Id.*

In the present case, the sentencing disparity of which defendants McMutuary and Grier complain arose from the district court's decision to sentence their co-conspirator Brown to a twelve-month period of home detention and probation, while they received sentences within the applicable Guidelines ranges. We turn first to an examination of the sentence received by Brown.

Brown pleaded guilty to the following charges: conspiracy to commit bank robbery in violation of 18 U.S.C. § 371; armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d); and use of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)—the same charges for which McMutuary and Grier were convicted. The district court concluded that Brown's plea of guilty to these charges resulted in a total offense level of twenty-four and a criminal history category of II under the Guidelines. This calculation resulted in a sentencing range of fifty-seven to seventy-one months, with an additional consecutive sixth-month sentence imposed on Brown as a result of the violation of § 924(c).[4]

As a result of Brown's cooperation with the government, the government included a paragraph in Brown's plea agreement providing that at the time of Brown's sentencing the government would move the court pursuant to U.S.S.G. § 5K1.1 "to depart from the applicable Guidelines range and the statutory minimum sentence, and to impose a sentence of imprisonment ... of 66% of the low end of the combined sentencing range that results from the aggregation of the five year mandatory minimum prison term for carrying and using a firearm during and in relation to a crime of violence with the low end of the applicable guideline range for the remaining offenses." Prior to sentencing, Brown also moved for a downward departure based on extraordinary family circumstances, and at his sentencing, he presented testimony of family members in support of his claim that he was needed at home to care for his parents and his eleven year-old niece. The government opposed this motion, but at sentencing moved pursuant to the plea agreement for departure under U.S.S.G. § 5K1.1.

---

disparities nation-wide.... The Guidelines' goal of national sentencing uniformity is not aimed only at the particular criminal conduct that coconspirators may share, but also addresses other factors that often vary between co-conspirators like acceptance of responsibility and assistance to the government.
*United States v. Withers*, 100 F.3d 1142, 1149 (4th Cir.1996).

4. In its current form, § 924(c) provides:
[A]ny person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime ... be sentenced to a term of imprisonment of not less than five years....
18 U.S.C. § 924(c)(1)(A)(i).

After considering both the government's and Brown's motions, the district court departed downward to an offense level of ten and sentenced Brown to a period of twelve months of home detention and probation. In imposing that sentence, the court cited both Brown's cooperation and his family circumstances, but failed to assign either ground to any particular aspect of its departure. By contrast, defendants McMutuary and Grier received sentences of 195 and 138 months, respectively, for the same crimes (minus McMutuary's conviction for perjury).

██ In sentencing Brown, the district court departed below both the applicable Guidelines range and the statutory mandatory minimum five-year sentence required by the count charging Brown with violating § 924(c). While a court may impose a sentence below a defendant's Guidelines range based on a substantial assistance motion pursuant to U.S.S.G. § 5K1.1, imposition of a sentence below a statutory minimum (such as the one required by § 924(c)) requires a motion by the government pursuant to 18 U.S.C. § 3553(e).[5] In this case, § 3553(e) provides for only one basis for departure below a statutory mandatory minimum—upon motion by the government for substantial assistance provided by the defendant. *See United States v. DeMaio*, 28 F.3d 588, 591 (7th Cir.1994) ("[T]he district court may only depart below a statutory minimum sentence to reflect a defendant's substantial assistance to the authorities."); *United States v. Thomas*, 11 F.3d 732, 736–37 (7th Cir.1993) (stating that departures from mandatory minimum sentences allowed only for assistance to the government). Absent a

§ 3553(e) motion by the government, the sentencing court may not depart below the statutory mandatory minimum except in limited circumstances not relevant to this case.

McMutuary and Grier contend that the district court's decision to depart below the statutory mandatory minimum sentence resulted from an improper reliance on Brown's family circumstances. They assert that the government did not move pursuant to § 3553(e) for a departure below the statutory mandatory minimum required by the § 924(c) count, and, therefore, the district court must have necessarily relied on Brown's family circumstances. Although the government submits that it moved pursuant to § 3553(e) for a departure below the mandatory minimum, the government concedes that "it seems impossible to say that the district court did not incorrectly base its decision to depart below the five-year minimum, at least in part, on Brown's family circumstances." The defendants believe the erroneous nature of Brown's sentence resulted in a sentencing disparity that cannot be justified by a proper application of the Guidelines. Therefore, they argue that the district court should have considered this disparity when examining their motions for a downward departure.

██ The government's contention that it moved pursuant to § 3553(e) for a downward departure below the statutory mandatory minimum with respect to Brown's sentence is, at the very least, disingenuous. While an explicit reference to § 3553(e) is not necessarily required before a sentenc-

---

**5.** Section 3553(e) provides:

Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

18 U.S.C. § 3553(e).

Pursuant to 18 U.S.C. § 3553(f)(1)-(5), a defendant may also be eligible for a reduction below the mandatory minimum sentence if

the sentencing court finds that the defendant has fulfilled five requirements. *See also* U.S.S.G. § 5C1.2 (reiterating these requirements). This section is referred to as a "safety valve" provision and limits the applicability of statutory minimum sentences as to "first-time, non-violent drug offenders who were not organizers of criminal activity and who have made a good faith effort to cooperate with the government." *United States v. Arrington*, 73 F.3d 144, 147 (7th Cir.1996).

ing court may depart below a statutory minimum, "the Government must in some way indicate its desire or consent that the court depart below the statutory mandatory minimum before the court may do so." *Melendez v. United States*, 518 U.S. 120, 126 n. 5, 116 S.Ct. 2057, 135 L.Ed.2d 427 (1996). The government bases its argument that it communicated its consent to a departure below the statutory mandatory minimum on certain language in the plea agreement. A paragraph in the plea agreement specified that at the time of Brown's sentencing the government would request that the district court depart downward pursuant to U.S.S.G. § 5K1.1 "from the applicable sentencing guidelines range and the statutory minimum sentence." However, when the language of the plea agreement is juxtaposed against other language in the plea agreement and the government's oral motion for departure made at the time of Brown's sentencing, it is clear that the government did not desire or consent to a departure below the statutory mandatory minimum. The terms of the plea agreement stated that the government would request that the district court depart one-third from the low end of the combined sentencing range that resulted from the aggregation of the five-year mandatory prison term for the § 924(c) violation with the applicable Guidelines range for the remaining offenses. The request for a one-third departure was reiterated at Brown's sentencing hearing. However, no mention was made of a departure below the statutory mandatory minimum. At best, Brown could have received a sentence of seventy-eight months pursuant to the terms of the plea agreement. We recognize that the district court would not have been bound by the government's request for a one-third departure. Nevertheless, our examination of the agreement and the government's motion at Brown's sentencing hearing belies any suggestion that the government desired or consented to a departure below the statutory mandatory minimum. It necessarily follows that the district court was without power "to impose a sentence below the statutory minimum to reflect a defendant's cooperation when the Government has not authorized such a sentence, but has instead moved for a departure only from the applicable Guidelines range." *Melendez*, 518 U.S. at 126, 116 S.Ct. 2057. The fact that the government passed up the opportunity to appeal the error in Brown's sentence has no impact on this conclusion.

It is clear then that the district court erred in departing below the statutory mandatory minimum of five years imprisonment when it imposed a sentence of probation and home confinement upon Brown. Because Brown would not have received this sentence in the absence of the district court's error, the error contributed, at least in part, to the disparity in the sentences imposed. This disparity is not "the result of a proper application of the Guidelines to the particular circumstances of [this] case." *Meza*, 127 F.3d at 550.[6] Rather, it is the result of the district court's error in departing below the statutory mandatory minimum when sentencing Brown. For this reason, the disparity in the present case can only be described as unjustified under *Meza*.

"The goal of the Sentencing Guidelines is, of course, to reduce unjustified disparities and so reach towards the evenhandedness and neutrality that are the distin-

---

**6.** The government's effort to cast the error made by the district court as a "non-Guidelines error" with the effect of 18 U.S.C. § 3553(e) operating completely outside the context of the Guidelines is of no avail. Proper application of the Guidelines requires more than a rote computation of Criminal History Categories and Guidelines ranges. Statutory mandatory minimum sentences are explicitly contemplated in several sections of the Guide-

lines, and the Guidelines address how courts should deal with such sentences. For example, U.S.S.G. § 2K2.4 specifically refers to the effect of § 924(c) upon a defendant's sentence: "If the defendant, whether or not convicted of another crime, was convicted under 18 U.S.C .... § 924(c) ..., the term of imprisonment is that required by the statute." U.S.S.G. § 2K2.4.

guishing marks of any principled system of justice." *Koon,* 518 U.S. at 113, 116 S.Ct. 2035; *see also United States v. Schulte,* 144 F.3d 1107, 1110–11 (7th Cir.1998) ("The Guidelines seek uniformity ... among federal sentences for similar conduct."). For this reason, the district court must consider, in light of the Supreme Court's holding in *Koon* and our own decision in *Meza,* whether the unjustified disparity between the sentence imposed on Brown and the sentences imposed on McMutuary and Grier should serve as a basis for a downward departure.[7]

### III. CONCLUSION

For the reasons stated herein, we AFFIRM the district court's denial of defendant Grier's motion to dismiss for preindictment delay, and REVERSE and REMAND for reconsideration of the sentences imposed on McMutuary and Grier.

MANION, Circuit Judge, concurring.

I fully agree with the court's rejection of Grier's due process argument, and I agree that under the rule of *United States v. Meza,* 127 F.3d 545 (1996), the defendants' sentences must be vacated. I write separately to question the applicability of the rule of *Meza.*

The court correctly concludes that Brown's sentence was illegally short—"unjustified" to use *Meza's* term. But neither Grier's nor McMutuary's sentence was incorrect. Neither complained about the applications of the Guidelines to them; each was sentenced within the appropriate range, so if Brown's illegal sentence were not in the picture, neither Grier nor McMutuary could even appeal from their sentence. *See United States v. Mattison,* 153 F.3d 406, 412 (7th Cir.1998). But the rule of *Meza* apparently puts Brown's sentence in the picture.

The focus of the rule in *Meza* as now applied in this case is much too narrow, thus allowing the appellants to raise a question that need not be asked. Prior to the adoption of the Guidelines, the federal sentences for similar crimes showed significant disparity, depending on the sentencing judge. Congress was convinced this perceived disparity—which arguably resulted from the nearly unlimited discretion given to federal district court judges—was unjustified; the Guidelines were an attempt to eliminate this disparity. So when examining a supposed "disparity" in sentencing, the proper focus should include *all* federal sentences, not merely the few resulting from one judge in a particular trial. The disparity between the sentence Brown got (and what he should have gotten) reflects not only upon the sentences of the two other defendants in this case, but upon the federal sentences of *all* other bank robbers. Surely the rule in this circuit is not that three improper sentences are better than one. Fortunately the court emphasizes, opn. at 970 n. 7, that *Meza* does not require that Grier and McMutuary receive downward departures due to the disparity with Brown, only that the court consider it.

The length of one defendant's sentence should almost never be the basis for a downward departure for another. I recognize that in *Koon* the Court prohibited lower courts from expanding the number of the impermissible factors that may not be taken into consideration. *See* opn. at 965–66 (citing *Koon,* 518 U.S. at 106–07, 116 S.Ct. 2035). But before a district court may depart from the Guidelines, the court must find that the factor at issue—here "disparity" in sentences—"as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guidelines." *Koon,* 518 U.S. at 109, 116 S.Ct. 2035. Nothing about Grier or

---

7. This opinion should not be construed by the district court to *require* a downward departure upon reconsideration of the sentences imposed on either McMutuary or Grier. Both defendants have already been sentenced at the low end of the applicable Guidelines ranges. The unjustified disparity is simply a factor that must be considered by the district court in determining their sentences.

McMutuary took *their* cases outside the "heartland." The only person who escaped from the heartland was Brown, and his sentence was way too short. But that does not make Grier's or McMutuary's situation unusual compared to the federal sentences of most bank robbers.

Moreover, as a practical matter, the rule of *Meza* is difficult to implement. It requires the district judge, when deciding whether to downwardly depart for some defendants, to ask whether she had given an illegal sentence to another defendant involved in the same crime. Not surprisingly, the district judge in this case was unwilling to say she had. So in the end, what we will have is what occurred here: appeals that raise collateral attacks based on some other defendant's sentence. The proper solution to an illegal sentence is an appeal by the government seeking to correct the error, not an appeal by the co-defendants seeking to compound the error by getting a windfall for themselves.

### ORDER

July 20, 1999

The petition for rehearing in the above-entitled case is GRANTED, the opinion entered on May 5, 1999 is VACATED, and the appeal is restored to the calendar for oral reargument at a date and time to be announced.