**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Antonio MEZA, Defendant–Appellant.**

**No. 95–2184.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 24, 1995.

Decided Jan. 29, 1996.

Vacated and Remanded by the United States Supreme Court Nov. 18, 1996.

Decision on Remand Oct. 17, 1997.

William T. Grimmer (Submitted), Office of the United States Attorney, South Bend, IN, for Plaintiff–Appellee.

Richard Kammen, McClure, McClure & Kammen, Indianapolis, IN, for Defendant–Appellant.

Before EASTERBROOK, KANNE, and ROVNER, Circuit Judges.

KANNE, Circuit Judge.

This case is before us on remand from the Supreme Court of the United States. *Meza v. United States*, —— U.S. ——, 117 S.Ct. 478, 136 L.Ed.2d 373 (1996). In its order, the Supreme Court granted Meza's petition for a writ of certiorari, vacated our earlier judgment, and remanded the case to this Court for review in light of the Supreme Court's intervening decision in *Koon v. United States*, 518 U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). In an earlier appeal, this Court followed our established precedent and held that a district court has no authority to depart from the Sentencing Guidelines to rectify a perceived disparity among coconspirators' sentences. After incorporating *Koon's* analysis, we find that a disparity between coconspirators' sentences that results from a downward departure for some, but not all, of the co-conspirators for cooperating with the Government is not a valid basis for downward departure for the non-cooperating conspirator. We therefore again affirm the district court's refusal to depart downward from the Guidelines' sentencing range.

## I.  HISTORY

In 1992, an investigation revealed that Ricky Bryant and his brother were dealing large quantities of marijuana in the Goshen/Elkhart area of Indiana from a source in Texas. The appellant, Antonio Meza, acted as the middleman in these transactions. He would acquire the marijuana in Texas and sell it to Bryant for a fee of $50.00 per pound. The marijuana would then be driven back to Indiana and distributed. Law enforcement officials estimated that Meza supplied up to 800 pounds of marijuana to Bryant.

On March 3, 1994, the Grand Jury for the Northern District of Indiana returned a 15–count indictment against Meza for his partic-ipation in this conspiracy to distribute marijuana. Law enforcement officials, however, were unable to arrest Meza in Texas until October 3, 1994 as they were involved in another extensive investigation. By the time of Meza's arrest, the other conspirators had already cooperated with the Government, and each had been convicted and sentenced. Meza did not seek to cooperate with the Government.

Meza entered a guilty plea on January 10, 1995 and was advised that he was facing a possible mandatory minimum sentence of sixty months for his role in a conspiracy to possess with intent to distribute marijuana in excess of 100 kilograms in violation of 21 U.S.C. § 846. On May 5, 1995, Judge Miller held a sentencing hearing, at which neither side objected to calculations that placed Meza in criminal history category I, base offense level twenty-three, and a sentencing range of forty-six to fifty-seven months.

At the hearing, Meza sought a departure downward from this sentencing range to remedy a perceived disparity in sentences between himself and the others in the conspiracy. The Government argued against any kind of departure, stressing that any disparity in sentences between the co-offenders was due to the effect of U.S.S.G. § 5K1.1 on those individuals for their cooperation with the ongoing investigation. *See United States Sentencing Guidelines Manual,* § 5K1.1 (1994). According to the Government, Meza did not merit a departure under § 5K1.1 because Meza was unwilling to cooperate with the Government.

Relying on our precedent, the court refused Meza's request. It believed it had no authority to grant Meza's departure request because a "disparity among codefendants' sentences is not a valid basis to challenge a guideline sentence otherwise correctly calculated." *United States v. Meza,* No. 3:94–CR–14, at 4 (N.D.Ind. May 5, 1995) (sentencing order) (quoting *United States v. Dillard,* 43 F.3d 299, 311 (7th Cir.1994)); *see also United States v. Edwards,* 945 F.2d 1387, 1398 (7th Cir.1991) (applying rule against coconspirators who were codefendants); *United States v. Smith,* 897 F.2d 909, 911 (7th Cir.1990) (applying rule against co-conspirators who were not codefendants); *United States v. Guerrero,* 894 F.2d 261, 267 (7th Cir.1990) (applying rule against coconspirators who were codefendants). The district court also stated that it would find that a disparity of sentencing is not a permissible basis for departure even without such precedent. According to the court, Meza did not merit a departure downward in sentencing because his circumstances [we]re far from unique; they d[id] not lie outside the "heartland" of conspiracy cases. U.S.S.G. § 5K1.1 is a disparity-producing guideline, and has been so since its inception. It is designed to produce disparate sentences for otherwise similarly situated offenders; the goal of uniformity takes a back seat to encouraging offenders to cooperate with the prosecution. *United States v. Meza,* No. 3:94–CR–14, at 5 (N.D.Ind. May 5, 1995) (sentencing order).

After being sentenced to forty-six months, Meza appealed his sentence, arguing that a disparity in sentencing is an appropriate basis for a district court to depart downward from a sentencing range. On January 29, 1996, we affirmed Meza's sentence, reconfirming our agreement with the other circuits that a district court has no authority to depart for a perceived disparity among coconspirators' sentences. *See United States v. Meza,* 76 F.3d 117, 121 (7th Cir.1996) (noting that every other circuit has reached same conclusion). Meza's petition for rehearing was denied on February 23, 1996. The United States Supreme Court decided *Koon v. United States,* 518 U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), on June 13, 1996.

On November 18, 1996, the Supreme Court granted Meza's petition for certiorari on the question of whether, in light of *Koon v. United States,* a district court may depart from a guideline sentence range not subject to a statutory minimum to cure an unwarranted disparity in sentences of coconspirators. —— U.S. at ——, 116 S.Ct. at 478. The Court vacated our judgment and remanded the matter to us for further consideration in light of *Koon. Id.*

## II. ANALYSIS

Meza argues that we have overstepped our bounds and intruded into the jurisdiction of the United States Sentencing Commission ("the Sentencing Commission" or "Commission") by concluding that a disparity in sentences, by itself, is not a basis for departure from the Sentencing Guidelines. *See Meza*, 76 F.3d at 121; *see also Edwards*, 945 F.2d at 1398. To reach this conclusion, Meza interprets the Supreme Court's holding in *Koon* to permit a district court to consider as a potential basis for departure *any* aspect of the case that has not been enumerated specifically by the Commission as a forbidden ground for departure. Because Meza believes the Sentencing Commission has not proscribed any consideration of sentencing disparities as a categorical matter, he argues that the federal courts cannot preclude all consideration of disparities, and thereby, requests a remand to the district court to determine whether any unjustified disparity existed in his case. The sole issue in this appeal, therefore, is whether, and if so to what extent, *Koon* requires this court to depart from its *Edwards'* line of precedent.

### A. The Authority to Determine Impermissible Departure Factors

The Supreme Court in *Koon* addressed whether the federal courts or the Sentencing Commission has authority to determine whether a departure based on an unmentioned factor is impermissible under all circumstances. —— U.S. at ——, 116 S.Ct. at 2050. Under the Commission's scheme, there are four categories of sentencing factors: forbidden, encouraged, discouraged, and unmentioned. *Id.* at ——, ——, 116 S.Ct. at 2045, 2051. Forbidden factors, which can never be the basis for departure from a sentencing range, include race, sex, national origin, creed, religion, socioeconomic status, drug or alcohol dependence, and economic hardship. 1994 U.S.S.G. §§ 5H1.10, 5H1.4, 5K2.12. Encouraged factors include the defendant's role in the offense, his criminal history, and his dependence upon criminal activity for a livelihood. *Id.* §§ 5H1.7–1.9. Discouraged factors, by contrast, are those "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range." 1994 U.S.S.G. Ch. 5, Pt.H, intro. comment. Discouraged factors are not "necessarily inappropriate" bases for departure, but they should be relied upon only "in exceptional cases." *Koon*, —— U.S. at ——, 116 S.Ct. at 2045 (quoting 1995 U.S.S.G. Ch. 5, Pt.H, intro. comment). Discouraged factors include a defendant's mental and emotional condition, physical condition including drug or alcohol dependance or abuse, and employment record. 1994 U.S.S.G. §§ 5H1.4–1.6.

Finally, if the factor does not fall into any of these categories, it is considered unmentioned by the Guidelines. In *Koon*, the Supreme Court stated that if the factor is unmentioned, "the sentencing court must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." —— U.S. at ——, 116 S.Ct. at 2051. To make this determination, the court must consider "the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," *id.* at ——, 116 S.Ct. at 2045, while bearing in mind "the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent.'" *Id.* (quoting 1995 U.S.S.G. Ch. 1, Pt.A). Thus, the Supreme Court concluded that sentencing courts must decide on a case by case basis whether an unmentioned factor merits a departure from the Guidelines' sentencing range.

The Government contended in *Koon* that Congress authorized the federal courts to evaluate whether an unmentioned factor is always an impermissible basis for departure. —— U.S. at ——, 116 S.Ct. at 2050. The Court, however, refused to "impose widespread judicial control over sentencing policy" because "Congress did not grant federal courts authority to decide what sorts of sentencing considerations are inappropriate in every circumstance." *Id.* Instead, Congress created the Commission to " 'establish sentencing policies and practices for the Federal criminal justice system,' 28 U.S.C. § 991(b)(1), and ... 'review and revise' the

Guidelines periodically, § 994(*o*)." *Koon*, —— U.S. at ——, 116 S.Ct. at 2051. "Thus, for the courts to conclude a factor must not be considered under any circumstance would be to transgress the policymaking authority vested in the Commission." *Id.* at ——, 116 S.Ct. at 2050.

This conclusion, however, did not reduce federal judges to robots that blindly follow the Guidelines' predetermined formulas to compute sentences. The courts still apply a three step process to evaluate whether a defendant merits a departure upward or downward from the established sentencing range. First, a court will determine whether an aspect of the case potentially removes it from the Guidelines' "heartland" and makes it a special, or unusual, case. *See Koon*, —— U.S. at ——, 116 S.Ct. at 2045. Second, it will look to see whether the Commission has proscribed any consideration of the factor as a categorical matter. *Id.* at ——, ——, 116 S.Ct. at 2045, 2051. Finally, a court will perform a fact specific analysis in light of the Commission's consideration of the factor to determine whether it is "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b).

## B. Disparity in Sentences Between Co-conspirators

In this matter, Meza and the Government agree that a disparity in sentences between coconspirators is a sentencing factor unmentioned in the Guidelines. The parties simply dispute how the federal courts can approach an unmentioned sentencing factor. The Government claims that we should look to the structure and theory of the Guidelines as a whole to determine whether disparity could *ever* be a proper basis for departure. Meza contends that the Government's argument was expressly rejected by the Supreme Court in *Koon* and that our acceptance of the Government's position would place this Court in direct conflict with the Supreme Court. We reject both arguments because they stem from the erroneous assumption that a dispar-

ity in sentences between co-conspirators that results from a downward departure for some, but not all, of the coconspirators for cooperating with the Government is an unmentioned sentencing factor in the Guidelines.

■ Contrary to both parties' assumptions, a disparity in sentences between coconspirators is not automatically a sentencing factor to consider. There are two types of disparities: justified and unjustified. A justified disparity is one that results from the proper application of the Guidelines to the particular circumstances of a case. This type of disparity can never be a basis for departure from the Guidelines' sentencing range because it is the application of the Guidelines that created the disparity in the first place. For example, upon a motion of the Government, 18 U.S.C. § 3553(e) provides a court with "authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e); *see also* 1994 U.S.S.G. § 5K1.1 (incorporating this authority into the Guidelines). Also, under § 6B1.2 and Fed.R.Crim.P. 11(e)(1), a court may accept a plea agreement that includes the dismissal of charges or an agreement not to pursue potential charges if "the remaining charges adequately reflect the seriousness of the actual offense behavior" and "accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines." 1994 U.S.S.G. § 6B1.2; *see also United States v. Maden,* 114 F.3d 155, 159 (10th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 226, —— L.Ed.2d —— (1997) (reversing departure downward for perceived disparity between codefendant who accepted plea agreement and one who did not). In these examples, a defendant's substantial assistance to the government and a defendant's acceptance of a plea agreement are the mitigating sentencing factors, and any resulting disparity between the sentences of the coconspirators is the result of the application of these factors. "The Guidelines' goal of national sentencing uniformity is not aimed only at the particular criminal conduct that co-conspirators may share, but also addresses other factors that

often vary between co-conspirators" like acceptance of plea agreements and assistance to the government. *United States v. Withers*, 100 F.3d 1142, 1149 (4th Cir.1996), *cert. denied,* ── U.S. ──, 117 S.Ct. 1282, 137 L.Ed.2d 358 (1997). Justified disparities like these, therefore, can never be a basis for departure from the Sentencing Guidelines as it is the Guidelines that produce the disparity.

■ An unjustified disparity, however, is potentially a sentencing factor to consider because "[t]he goal of the Sentencing Guidelines is, of course, to reduce unjustified disparities." *Koon,* ── U.S. at ──, 116 S.Ct. at 2053. An unjustified disparity is one that does not result from a proper application of the Guidelines. In other words, it is a disparity in sentences that cannot be explained by a comparison of each defendant against the Guidelines as a set of rules. For unjustified disparities, the sentencing court should apply the three step process described *supra* to determine whether a defendant merits a departure downward in his sentence so that the federal courts may provide "the evenhandedness and neutrality that are the distinguishing marks of any principled system of justice." *Id.*

■ In this case, Meza appeals a disparity in sentences between co-conspirators that results from his co-conspirators' willingness to provide substantial assistance to the Government and his unwillingness to do so.[1] This disparity in sentences has already been justified by the Sentencing Commission in its creation of § 5K1.1, which produces disparities by providing for a possible departure downward for those defendants who substantially assist the Government. "To grant [Meza] a lower sentence based on the departures earned by [a co-conspirator] would put [him] in a better position than a similarly situated defendant who was not so fortunate as to have a cooperating co-conspirator." *Withers,* 100 F.3d at 1149 (concluding that a disparity in sentences that results from a co-

conspirator's substantial governmental assistance is not an appropriate basis for a downward departure). We, therefore, do not overstep our bounds by concluding that a disparity in sentences between co-conspirators that results from a downward departure for some, but not all, of the co-conspirators for cooperating with the Government is not a basis for downward departure for the non-cooperating conspirator.

### C. The Effect of *Koon* on our *Edwards'* Precedent

Thus, the Supreme Court's conclusions in *Koon* require us to amend our approach to disparities in sentences between co-conspirators. Previously, it was sufficient to state that a disparity in sentences, by itself, is "not a valid basis for departure from the guideline sentence range." *Meza,* 76 F.3d at 121; *see also United States v. Austin,* 54 F.3d 394, 403 (7th Cir.1995); *Dillard,* 43 F.3d at 311; *Edwards,* 945 F.2d at 1398. Now, we must determine whether the disparity is justified or not. If the disparity between sentences is the justified result of a proper application of the Guidelines to the particular circumstances of that case, then it is not a valid basis for departure from the Guidelines' sentencing range. Because the disparity in sentencing between Meza and his coconspirators is the result of his co-conspirators' willingness to cooperate with the Government and his refusal to do so, Meza has not put forth a valid basis for a downward departure.

For this reason, we AFFIRM on remand the district court's sentence imposing forty-six months of incarceration.

AFFIRMED

---

1. At the sentencing hearing, Meza's counsel admitted that [t]here were brief discussions about potential of 5K1 type of cooperation and [petitioner] was unwilling to do that. And so we have not sought cooperation under 5K1, and there has

been none, and, again we are not sitting here saying the government had in some manner been unfair. *United States v. Meza,* No. 3:94–CR–14, at 13–14 (N.D.Ind. May 5, 1995) (sentencing hearing transcript).