# United States Court of Appeals
## For the First Circuit

---

No. 99-2380

UNITED STATES OF AMERICA,

Appellant,

v.

EUGENE EDWARD MARTIN,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

---

Before

Selya and Lipez, Circuit Judges,

and Casellas,* District Judge.

---

Dina Michael Chaitowitz, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for appellant.
Thomas H. Souza, with whom Jeremy M. Carter and Carter & Associates were on brief, for appellee.

---

August 15, 2000

---

_____
*Of the District of Puerto Rico, sitting by designation.

**SELYA, Circuit Judge.** This appeal tests the boundaries of the district court's authority to depart from the prescribed guideline sentencing range (GSR). Concluding, as we do, that the court roamed too far afield, we vacate the imposed sentence and remand for resentencing.

## I.

### Background

The relevant facts are simple and straightforward. On May 11, 1999, defendant-appellee Eugene Edward Martin pleaded guilty to a charge of distributing 119.6 grams of cocaine base. See 21 U.S.C. § 841. The district court convened the disposition hearing on September 8, 1999. It applied the 1998 edition of the United States Sentencing Guidelines — a determination with which no one quarrels, see United States v. Harotunian, 920 F.2d 1040, 1041-42 (1st Cir. 1990) — and arrived at a base offense level of thirty-two. See USSG §2D1.1(c)(4). The court proceeded to adjust downward by three levels for acceptance of responsibility. See id. §3E1.1. It then found the "safety valve" to be applicable, see 18 U.S.C. § 3553(f); USSG §§2D1.1(b)(6), 5C1.2, and effected a further two-level reduction, see generally United States v. Ortiz-Santiago, 211 F.3d 146, 150-51 (1st Cir. 2000) (explaining operation of the safety valve). These calculations yielded an adjusted offense

level of twenty-seven, which, when combined with Martin's lack of a prior criminal record, corresponded to a GSR of 70-87 months.  See USSG Ch.5, Pt.A (sentencing table).

To this point, the district court's judgments were impeccable.  The court, however, did not stop there; it snubbed the GSR and departed downward sua sponte to impose a 64-month incarcerative term.  The judge premised this departure on a combination of two factors.  First, he remarked "the absence of [an active] Sentencing Commission."[1]  This circumstance, he reasoned, was one that "no one had contemplated" and that permitted him to depart "if I think it reasonable that had there been a Commission the guidelines would in fact apply differently."  Judge Young then referred to a statistical compilation that he had directed the chief probation officer to prepare.  These statistics purported to reflect all federal sentences imposed in fiscal year 1997 on persons whose primary offense was drug trafficking, regardless of the nature or amount of the substances involved.  In Judge Young's view, the data "show[ed] that nationally the median months in prison out of 17,137 offenders sentenced was 57 months, and in the First

---

[1]In fact, the Commission had no voting members from and after October 31, 1998, having lost its quorum earlier that year.  This situation persisted until the Senate confirmed seven new Commissioners on November 10, 1999.

Circuit the mean was 67.8 months, with a median of 50 months out of 543 offenders." Accordingly, sentencing Martin within the GSR would promote this disparity, whereas imposing a shorter term of immurement would partially offset it (and was, in the judge's opinion, "just and fair").

The government appeals this downward departure.

## II.

## Analysis

We review departure decisions for abuse of discretion. See Koon v. United States, 518 U.S. 81, 96-100 (1996); United States v. Brewster, 127 F.3d 22, 25 (1st Cir. 1997). Our precedents contemplate a trifurcated approach. "First, we determine as a theoretical matter whether the stated ground for departure is permissible under the guidelines. If the ground is theoretically appropriate, we next examine whether it finds adequate factual support in the record. If so, we must probe the degree of the departure in order to verify its reasonableness." United States v. Dethlefs, 123 F.3d 39, 43-44 (1st Cir. 1997) (footnote and citations omitted). In this instance, we need not go beyond the first facet of the Dethlefs inquiry.

**A**

Before proceeding to that point, however, we pause to consider the defendant's contention that the government forfeited the argument that it advances on appeal by failing to raise it below. On the surface, this contention seems potent — but the surrounding circumstances dissipate its force.

A sentencing court has an obligation to give reasonable notice that it is contemplating a departure. See Burns v. United States, 501 U.S. 129, 138-39 (1991). This obligation applies not only to upward departures, as was the case in Burns, but also to downward departures. See United States v. Pankhurst, 118 F.3d 345, 357 (5th Cir. 1997). Here, the record reveals that the sentencing court neglected to provide the government with adequate notice of its contemplated downward departure.

The defendant questions whether this is so, adverting to a pretrial conference held on December 21, 1998, in which Judge Young mentioned the dormancy of the Sentencing Commission, expressed concern about the status of the guidelines, and told the parties that he intended to obtain some sentencing data from the chief probation officer. We reject the suggestion that these comments constituted adequate notice of a contemplated departure.

In the first place, the judge's remarks were made almost five months before the defendant changed his plea and some nine months before the disposition hearing. The record reveals no continuing dialogue during the interim. Moreover, the presentence investigation report made no mention of this (or any other) possible basis for departure. On these facts, we do not think that the prosecutor reasonably could have been expected to divine an intention to depart despite the court's evident discomfiture with the Sentencing Commission's status. The judge's ruminations at the pretrial conference — ruminations that he himself described as "only academic" — may have adumbrated, but certainly did not articulate, a coherent rationale for departure.

If more were needed — and we doubt that it is — the statistics upon which the judge rested the departure were not furnished to the prosecution at any time prior to the disposition hearing. This was too late: a sentencing court must give fair warning not only of the rationale for a possible departure but also of the facts that undergird it in the particular instance. See United States v. Morris, 204 F.3d 776, 778 (7th Cir. 2000). Here, the court's introduction of a substantial body of new data at the disposition hearing contravened its obligation to afford the parties reasonable

notice of what it envisioned as departure-justifying facts. See id. Given this chronology of events, we are constrained to conclude that the district court failed to comply with Burns.

Next, we turn to the question of remedy. In some circumstances, the omission of a departure warning might engender a remand for further proceedings. Here, however, such a course would unduly prolong matters without any corresponding gain. The government's objection to the departure is purely legal in nature, the parties have fully briefed the merits, and supplementary factfinding is not indicated. As long as fairness concerns are not compromised, courts should try to be practical. In the circumstances of this case, it makes sense to treat the lower court's failure to give notice as excusing the government's procedural default and rendering the departure decision ripe for appellate review.[2] Accord United States v. Bartsma, 198 F.3d 1191, 1197-99 (10th Cir. 1999).

**B**

Having vaulted this procedural hurdle, we repair to the first prong of the Dethlefs inquiry. A court may impose a

---

[2]We hasten to add that the error of which the government complains is plain, and thus warrants correction whether or not preserved. See United States v. Mangone, 105 F.3d 29, 35 (1st Cir. 1997); see also United States v. Torres-Rosa, 209 F.3d 4, 8 (1st Cir. 2000) (confirming applicability of plain error doctrine in sentencing appeals).

sentence outside the GSR if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). To determine whether a circumstance was adequately considered by the Commission, the court must examine "the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." Id. These precepts are embedded, virtually word for word, in the guidelines themselves. See USSG §5K2.0.

The departure power is intended to ameliorate the mechanistic rigidity of the guidelines and to import a modicum of flexibility into the sentencing calculus. Thus, the Commission, generally speaking, did "not intend to limit the kinds of factors, whether or not mentioned anywhere in the guidelines, that could constitute grounds for departure in an unusual case." USSG Ch.1, Pt.A, intro. comment. (n.4(b)). Given this overall philosophy, courts categorically reject potential grounds for departure at their peril.

Most general rules admit of exceptions, however, and there are several exceptions to the rule that a departure theoretically can be grounded on any differentiating factor.

-9-

Under these exceptions, sentencing courts are barred from basing departures on forbidden factors, factors adequately considered by the Commission, factors that lack relevance, and factors that offend the framework and purpose of the guidelines.

The first of these exceptions refers to certain enumerated factors that the Commission has placed beyond the pale, e.g., race, sex, national origin, creed, religion, and socioeconomic status. See USSG §5H1.10. Forbidden factors can never serve as the basis for a departure. See Koon, 518 U.S. at 95-96; United States v. Perez, 160 F.3d 87, 89 (1st Cir. 1998). The second exception flows directly from the statutory requirement that only an "aggravating or mitigating circumstance . . . not adequately considered by the [Commission]" can ground a departure. 18 U.S.C. § 3553(b). The third exception, which precludes the use of irrelevant factors, can be considered a subset of the second. See, e.g., United States v. Clase-Espinal, 115 F.3d 1054, 1059-60 (1st Cir. 1997) (holding that acceding to deportation was a circumstance adequately considered by the Commission and therefore irrelevant to the departure calculus). The fourth exception, which proscribes the use of considerations that are inconsistent with the structure and theory of the guidelines, also bears a family resemblance to the second exception. It is, after all, entirely plausible to

conclude that the Commission "adequately" considers such factors by disregarding them, and, indeed, the case law applies these last three exceptions without much differentiation amongst them. See, e.g., United States v. Snyder, 136 F.3d 65, 70 (1st Cir. 1998) (precluding departures based on federal/state sentencing disparities); Dethlefs, 123 F.3d at 47 (stating that considering an unconditional guilty plea as a factor supporting departure "would intrude upon the Commission's prerogatives and undercut the sentencing guidelines"); United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir. 1991) (precluding downward departures based on a perceived need to equalize sentencing disparities between similarly situated codefendants); United States v. Aguilar-Pena, 887 F.2d 347, 350-53 (1st Cir. 1989) (precluding downward departures based on incidence of crime in different locales).

In this case, the lower court predicated its downward departure on the moribund status of the Sentencing Commission, together with the perceived disparity between the defendant's GSR and the national median sentence for persons convicted of federal drug-trafficking offenses. Neither element, singularly or in combination, can carry the weight of a downward departure.

The Sentencing Commission certainly did not anticipate being without sufficient members to muster a quorum. See USSG Ch.1, Pt.A, intro. comment. (n.4(b)) (explaining that "[t]he

-11-

Commission is a permanent body").  But the Commission's lack of a quorum, standing alone, is simply irrelevant to an individual sentencing decision.  Nothing about vacancies on the Commission is inherently aggravating or mitigating for purposes of a departure assessment.  This circumstance therefore needs help to clear the relevancy hurdle:  there must be a solid, non-speculative reason to believe that the guidelines would apply differently had the Commission been at full strength.  In the case at bar, the court's adjuvant reason was itself invalid as a matter of law.  We explain briefly.

Under our jurisprudence, the fact that the national median for a broadly stated offense type may be above or below a particular defendant's GSR cannot be used to justify a sentencing departure.  See United States v. Rodriguez, 63 F.3d 1159, 1168 (1st Cir. 1995) ("Absent misapplication of the Guidelines, the mere fact of disparity is of no consequence."); see also United States v. Banuelos-Rodriguez, 215 F.3d 969, 973-78  (9th Cir. 2000) (en banc) (holding that inter-district sentencing disparities, arising from differing charging and plea-bargaining practices, do not constitute a valid ground for departure); Snyder, 136 F.3d at 70 (similar, in respect to federal/state sentencing disparities); Wogan, 938 F.2d at 1449 (similar, in respect to sentencing disparities between similarly

-12-

situated codefendants). Departures based on these kinds of perceived inequities "would contradict hopelessly the guidelines' structure and theory." <u>Snyder</u>, 136 F.3d at 70.

The district court's statistical foray aptly illustrates the wisdom of this point. The base offense level for drug trafficking varies from six (for, e.g., less than 250 grams of marijuana) to thirty-eight (for, e.g., 30,000 kilograms of marijuana). <u>See</u> USSG §2D1.1(c). For defendants who are in criminal history category I, an offense level of six translates into a GSR of 0-6 months of imprisonment, whereas an offense level of thirty-eight produces a GSR of 235-293 months. <u>See</u> USSG Ch.5, Pt.A (sentencing table). This graduated sentencing structure reflects the Commission's view that not all drug-trafficking offenses are equivalent; some deserve much longer sentences than others. To bring the illustration closer to home, this structure strongly suggests that the Commission intended an individual responsible for distributing 119.6 grams of cocaine base — like Martin — to serve more time than the average drug-trafficking offender. Using the median sentence imposed as a lodestar for routine departures would effectively overrule that considered judgment. Accordingly, this factor is ineligible for inclusion in the departure calculus.

Since it is clear that the district court would not have departed absent reliance on this impermissible datum, we could end the analysis here. Cf. Brewster, 127 F.3d at 30 (suggesting that departure based on combination of valid and invalid grounds must be vacated when "the exclusion of the invalid ground . . . undermine[s] the departure rationale articulated by the sentencing court"). We continue, however, because we think that identifying the deeper flaw in the district court's approach may prove worthwhile for future cases.

The structure and purpose of the guidelines do not permit departures based on counterfactual reasoning of the type employed by the court below. Courts must deal with the guidelines as they stand, without speculation about how the Commission might (or might not) choose to modify them at some future date.[3] Just as statutes outlive the particular legislators who enact them (whether or not the legislative body is in session), so too the enforceability of the guidelines does not depend on the continued functioning of the Commission. To the contrary, sentencing guidelines, once promulgated, have the

---

[3]At the expense of carting coal to Newcastle, we note that there is not so much as a hint in the record that the Commission, had it been velivolant, would have reacted to the statistics cited by the district court by reducing the penalties for crack cocaine — or that, had the Commission done so, Congress would have let the revision become law.

force of law, see 18 U.S.C. § 3553(b); USSG Ch.1, Pt.A, intro. comment. (n.2), and that circumstance obtains even when the Commission is empty. Thus, departures (up or down) based on the inherently speculative possibility that the guidelines might under other circumstances be modified are impermissible.

Martin offers a variation on this theme. He suggests that the moribund status of the Sentencing Commission left a vacuum and permitted the trial judge to fill it. We reject this surmise.

In the pre-guidelines era, judges made sentencing choices with few restrictions. But the adoption of the guidelines reined in that largely unbridled discretion. From that point forward, judges no longer were permitted to substitute their personal brand of justice for the collective wisdom of the Sentencing Commission. See United States v. Jackson, 30 F.3d 199, 203 (1st Cir. 1994) (explaining that, "absent specific circumstances independently justifying a departure, a judge cannot sentence outside a properly computed sentencing range merely because he believes that the guidelines work too severe a sanction in a particular case"); United States v. Norflett, 922 F.2d 50, 53 (1st Cir. 1990) (similar); Aguilar-Pena, 887 F.2d at 353 (similar). The Commission's lack of a quorum, without more, does not override this important

-15-

principle.  Consequently, a departure based on the district court's substitution of its own judgment for that of the missing Commissioners cannot stand.

There is one more leg to our journey.  In a last-ditch effort to salvage the sentence, Martin strives to convince us that we should overlook any error because the degree of departure was modest (he uses the phrase "de minimis").  We are not persuaded.  The first — and most basic — question in a departure inquiry is whether the stated ground for departure is permissible.  See Dethlefs, 123 F.3d at 43.  If the answer to that question is in the negative — as it is here — the extent of the departure is immaterial.

## III.

## Conclusion

We need go no further.  Because it was a clear abuse of discretion for the district court to depart downward on account of Commission vacancies, unrefined summary statistics, or a combination of the two, the judgment must be vacated.

**The government's appeal is sustained, the sentence appealed from is vacated, and the case is remanded for resentencing in accordance with this opinion.**

-16-