# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1001

_____

United States of America,                       *

                             *

           Appellee,             *

                             *

      v.                         *

                             *

John Herman Buckendahl,           *

                             *

           Appellant.          *

                                      Appeals from the United States
                                      District Court for the Northern

_____                       District of Iowa.

No. 00-1057

_____

United States of America,                       *

                             *

           Appellee,             *

                             *

      v.                         *

                             *

John Joseph Ringis,                *

                             *

           Appellant.          *

_____

No. 00-1151
_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Joseph John Johnson, | * |
| | * |
| Appellant. | * |

_____

No. 00-1266
_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Juan Carlos Valdivia-Cardona, also | * |
| known as Steven Paul Garcia, also | * |
| known as Stevan Garcia, | * |
| | * |
| Appellant. | * |

_____

No. 00-1392

_____

United States of America,           *
                                         *

          Appellant,        *
                                         *

      v.                    *
                                       *

Jeffrey Alan Clark,           *
                                       *

         Appellee.        *

_____

Submitted:  November 14, 2000

Filed:   May 31, 2001

_____

Before BEAM, HEANEY, and BYE, Circuit Judges.

_____

BEAM, Circuit Judge.

This opinion addresses appeals from five separate criminal cases in the Northern District of Iowa. At issue is whether a district court may depart downward from the United States Sentencing Guidelines (Guidelines) based on an interdistrict sentencing disparity arising from the practice of the United States Attorney for the Northern District of Iowa to rarely agree to grant use immunity under section 1B1.8 of the Guidelines. We hold that the court does not possess such authority. Accordingly, we affirm in part and reverse in part.

## I. BACKGROUND

The defendant in each criminal case pleaded guilty to at least some of the charges against him. John Joseph Ringis, Juan Carlos Valdivia-Cardona and Joseph John Johnson all entered pleas without cooperating with the government. They each made the decision to not cooperate, at least in part, because they were not offered section 1B1.8 use immunity. Without this protection, any information they gave to the authorities about the activities of others, which was also self-incriminating, could be used against them in calculating their offense levels (and thus in determining their sentences) under the Guidelines. Johnson and Valdivia-Cardona offered to cooperate with the government in exchange for section 1B1.8 protection, but when no protection was offered, they pleaded without cooperating. John Herman Buckendahl cooperated with the government by providing information on the criminal activities of others. The cooperation agreement contained a "limited use immunity" provision that prohibited the government from bringing further drug charges against Buckendahl based on the information he provided, but allowed the information to be used in calculating his sentence. In the course of his debriefing, he furnished information that tended to increase his sentence under the Guidelines.[1]

The district court held a consolidated hearing in these cases for the limited purpose of addressing the court's ability to depart downward from the Guidelines due to this purported policy or practice of the federal prosecutors in the Northern District of Iowa. The court determined that the prosecutor's office had such a policy or practice resulting in a significant disparity between the Northern and Southern Districts of Iowa in the availability of section 1B1.8 immunity. In fact, the court received testimony that

---

[1]More details about the situation of each individual defendant are contained in the district court opinion. United States v. Ringis, 78 F. Supp. 2d 905 (N.D. Iowa 1999).

prosecutors in only three or four other districts in the country followed a similar practice.

The court found that it possessed the authority to depart downward based on the disparate practices of the prosecutors. However, it declined to depart in the cases of Ringis, Valdivia-Cardona and Johnson because, by refusing to cooperate with the government, they had revealed no additional information that increased their sentences and thus suffered no actual prejudice as a result of the policy. The court also refused to depart in Buckendahl's case because, although he provided information in his debriefing that would have increased his sentence, the court concluded that the government already possessed this information through independent sources. Thus, he also suffered no prejudice as a result of the practice.

Jeffrey Alan Clark's case came before the court at a later date. He entered a plea of guilty and cooperated with the government by submitting to a debriefing session and testifying before a federal grand jury. As a result of information he provided through this cooperation, Clark's offense level under the Guidelines increased from 28 to 36. The court found this to be actual prejudice to Clark, and departed downward.

## II.    ANALYSIS

### A.    Standard of Review

We give substantial deference to the district court's decision as to whether to depart from the Guidelines in an individual case. Koon v. United States, 518 U.S. 81, 98 (1996). However, "whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point." Id. at 100.

**B.      Heartland Approach**

In response to the perception that "federal judges mete out an unjustifiably wide range of sentences to offenders with similar histories, convicted of similar crimes, committed under similar circumstances," Congress created the United States Sentencing Commission (Commission) for the purpose of promulgating a comprehensive set of sentencing guidelines.  Id. at 92 (citation omitted).  The Guidelines "specify an appropriate sentencing range for each class of convicted persons based on various factors related to the offense and the offender." Id. (citation omitted).  A district court must impose a sentence within the range specified by the applicable guideline.  Id.

However, Congress recognized that a sentencing court must retain some measure of flexibility to respond to the individual circumstances of a given defendant.  To serve that end, a district court may depart from the applicable guideline range if "'the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" Id. (quoting 18 U.S.C. § 3553(b)); see also U.S. Sentencing Guidelines Manual [hereinafter U.S.S.G.] § 5K2.0 (1999).  Sentencing courts should "treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." U.S.S.G. Ch. 1, Pt. A(4)(b).  When determining whether a case is typical or atypical (whether there exists a mitigating factor not adequately taken into account by the Commission), "the court shall consider only the sentencing guidelines, policy statements, and official commentary of the [Commission]."  18 U.S.C. § 3553(b).

After identifying a potential factor for departure, the sentencing court should employ the following rules:

[1] If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. [2] If the special factor is an encouraged factor, the court is authorized to depart if the applicable guideline does not already take it into account. [3] If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. [4] If a factor is unmentioned in the guidelines, the court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," decide whether it is sufficient to take the case out of the Guideline's heartland.

Koon, 518 U.S. at 95-96 (citations omitted). The Commission expected that departures based on factors not mentioned in the Guidelines would be "highly infrequent." U.S.S.G. Ch. 1, Pt. A(4)(b). We are cautioned, however, against creating broad rules about what may not be a proper basis for departure because "Congress did not grant federal courts authority to decide what sorts of sentencing considerations are inappropriate in every circumstance." Koon, 518 U.S. at 106.

Disparity in the availability of section 1B1.8 protection is a factor not specifically mentioned in the Guidelines. It is certainly not in the explicitly forbidden factors nor is it an encouraged or discouraged factor. See U.S.S.G. §§ 5H & 5K. Therefore, we will proceed to consider the structure and theory of the Guidelines to determine whether it is sufficient to take this case out of the Guideline's heartland and warrant departure.[2]

---

[2]It could also be argued that the "heartland analysis" only applies to offender characteristics or conduct and is not appropriately applied to other parts of the Guidelines. See United States v. Banuelos-Rodriguez, 215 F.3d 969, 974 (9th Cir. 2000) (en banc). While we agree that the heartland analysis seems most suited to evaluating offender characteristics and conduct, we decline to craft a rule at this time limiting it to such a context.

### C. Structure and Theory of Guidelines

### 1. Disparity in Practices

A justified disparity in legitimate prosecutorial practices, or even a disparity in sentences resulting from prosecutorial practices, is almost never a proper basis for departure. See United States v. Guzman-Landeros, 207 F.3d 1034, 1035 (8th Cir. 2000) (per curiam) (rejecting the defendant's argument that he would have been eligible "for a downward departure based on the sentencing disparity which arises from differing prosecution and plea-bargaining practices among federal districts"). For instance, we have held that a sentencing court may not depart based on disparities in the sentences of codefendants or coconspirators which arise from the plea bargaining and charging practices of prosecutors. See United State v. Wong, 127 F.3d 725, 728 (8th Cir. 1997); United States v. Polanco, 53 F.3d 893, 897 (8th Cir. 1995); United States v. Foote, 898 F.2d 659, 666 (8th Cir. 1990).

Other courts have reached similar results, finding no authority to depart based on sentencing disparities that resulted from interdistrict differences in plea-bargaining policies, United States v. Armenta-Castro, 227 F.3d 1255, 1257(10th Cir. 2000); United States v. Banuelos-Rodriguez, 215 F.3d 969, 978 (9th Cir. 2000) (en banc); United States v. Bonnet-Grullon, 212 F.3d 692, 709-10 (2d Cir.), cert. denied, 121 S. Ct. 261 (2000) or a prosecutor's decisions about attributing differing drug amounts to codefendants based on whether they entered a plea or went to trial, United States v. Rodriguez, 162 F.3d 135, 153 (1st Cir. 1998), cert. denied, 526 U.S. 1152 (1999). Generally, the proposition that disparities in sentences among codefendants resulting from a routine exercise of prosecutorial discretion are unsuitable for departure, is beyond question. See United States v. Meza, 127 F.3d 545, 549 (7th Cir. 1996) (finding codefendant disparity resulting from "proper application" of the Guidelines was

not a basis for departure); United States v. Epley, 52 F.3d 571, 584 (6th Cir. 1995) (denying departure where coconspirator "made a good deal with the authorities" and received a lower sentence); United States v. Ellis, 975 F.2d 1061, 1066 (4th Cir. 1992) (holding that absent prosecutorial misconduct a district court may not depart downward based on disparity between codefendant sentences). Additionally, a statistical disparity between the median sentence for drug trafficking in one particular circuit and the national median has been found to be an inappropriate ground for departure. United States v. Martin, 221 F.3d 52, 57 (1st Cir. 2000).

Defendants are correct that promoting greater uniformity in criminal sentences is one of the Guidelines' main purposes. See United States v. Decora, 177 F.3d 676, 678 (8th Cir. 1999). However, as the above cases make clear, departures based on the perceived disparity in individual cases would more likely serve to undermine the overall goal of uniformity rather than further it. See, e.g., Polanco, 53 F.3d at 898 ("Consideration of a codefendant's sentence would 'create, rather than alleviate, disparity among the sentences imposed nationwide upon federal defendants convicted of similar crimes.'") (quoting United States v. Hall, 977 F.2d 861, 864 n.4 (4th Cir. 1992)).

Allowing sentencing courts to depart based upon the disparity of availability of section 1B1.8 protection between districts potentially leads to the same result as the cited cases–actually undermining the overall goal of uniformity. However, under proper analysis, resolution of this case does not depend upon whether the departure would in fact promote or hinder national uniformity because "a review of the legislative history suggests that the disparity that Congress sought to eliminate did not stem from the exercise of prosecutorial discretion." Banuelos-Rodriguez, 215 F.3d at 976.

The conclusion to be drawn from this panoply of cases is that "justified" disparities–those resulting from the proper application of the Guidelines to each

individual case–are not an appropriate basis for departure. Meza, 127 F.3d at 549. However, unjustified disparities may warrant a departure.[3] Id. at 550.

## 2. Prosecutorial Authority to Enter Section 1B1.8 Agreements

Determining whether the interdistrict disparity in prosecutorial practices in these cases is justified turns upon prosecutorial authority. Only if the prosecutors do not possess the authority to rarely agree to section 1B1.8 protection would that practice result an improper application of the Guidelines, resulting in an unjustified disparity that could be corrected through the departure power.[4] In other words, the disparate and unique practice of the Northern District of Iowa can only be the basis for a departure under section 5K2.0 if the prosecutors have exceeded their authority or otherwise acted "improperly" under the Guidelines. The scope of prosecutorial discretion is defined not by reference to the practices of other federal districts, but by the Guidelines and governing law.

The district court relied heavily on United States v. Jones, 160 F.3d 473 (8th Cir. 1998). That case provides no independent basis for departure in these cases. In Jones we considered a sentencing court's authority to depart based upon a disparity in sentences among coconspirators. Of particular concern was the fact that principals in the conspiracy could get substantially lower sentences than lesser members of the

---

[3]In at least two instances, the Commission has amended particular guidelines to respond, in part, to disparities in sentences that have resulted from prosecutorial practices. See U.S.S.G. app. C, vol. I, amend. 365 & amend. 506. However, it is unclear whether this is evidence that the Commission believes disparities arising from varying exercises of prosecutorial discretion are generally unjustified, or whether disparities are acceptable and the Commission will intervene to correct only those that are not. Therefore, it ultimately does not help us in our interpretation of the Guidelines.

[4]If the prosecutors have exceeded their authority, then the court could depart even if there were no resulting disparity of sentences.

conspiracy because of the interaction of plea-bargaining practices and the Guidelines. Id. at 483. We noted that, "[w]hile courts generally endorse this anomalous byproduct of the [Guidelines], to the extent that the government's behavior directly results in prejudice to a defendant, which is significant enough to take the case out of the heartland of the Sentencing Guidelines, district courts have the discretion to grant an appropriate downward departure." Id. When examining section 1B1.8 agreements (or non-agreements), a defendant suffers prejudice significant enough to take the case out of the heartland if the prosecution engages in some misconduct, abuses its discretion, or otherwise acts improperly. Short of this, prosecutorial conduct concerning section 1B1.8 agreements cannot be a basis for departure.

Thus, after separating the wheat from the chaff in this case, we are left with the following question: is a general policy or practice of rarely granting section 1B1.8 protection within the government's proper exercise of prosecutorial discretion? We begin with the language of the Guidelines. Section 1B1.8(a) provides:

> Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

Section 1B1.8(b) further specifies that the restriction does not apply in several situations. Most notably, the court may rely on the protected information when it determines whether, or to what extent, a downward departure is warranted under section 5K1.1. U.S.S.G. § 1B1.8(b)(5). In contrast, a court may not use information protected in a section 1B1.8 agreement to depart upward from the applicable guideline range. U.S.S.G. § 1B1.8, cmt. n.1.

The government's discretion under this provision is extremely broad. The only limit on the ability to enter a section 1B1.8 agreement is that the information provided be about the activities of others. The guideline gives no indication about when, how often, or under what circumstances the government should make such an agreement. In In Re Sealed Case, the District of Columbia Circuit noted that the clause "upon motion of the government" in U.S.S.G. § 5K1.1 is part of a "congressional tradition of placing similar provisos in statutes that implicate issues of prosecutorial discretion and judgment." 181 F.3d 128, 132, 134 (D.C. Cir.) (en banc), cert. denied, 528 U.S. 989 (1999). We find the broad language contained in section 1B1.8 follows in that same tradition. Thus, the most natural reading of section 1B1.8 is that the Commission intended a decision about entering into agreements to be left to the prosecutor's discretion.

The Guidelines address prosecutorial discretion in several other places. U.S.S.G. § 6B1.2, which governs the acceptance of plea agreements, states that a court "may" accept an agreement dismissing charges (or agreeing not to pursue potential charges) if the court determines that the remaining charges reflect the seriousness of the defendant's conduct and the agreement does not undermine the Guidelines. The commentary to 6B1.2 states that "[t]his requirement does not authorize judges to intrude upon the charging discretion of the prosecutor." U.S.S.G. § 6B1.2, cmt. Also, a court may control any "inappropriate" manipulation of the indictment power through the use of its departure power. U.S.S.G. Ch. 1, Pt. A(4)(a). The implication of this language is that the court may not use its departure power to interfere with the prosecutor's legitimate use of its indictment authority. These provisions indicate that "the Commission considered the effects that the exercise of prosecutorial discretion has on the uniformity of sentences. The Guidelines allow sentencing courts to take certain limited actions in narrow circumstances to address a prosecutor's inappropriate exercise of discretion." Banuelos-Rodriguez, 215 F.3d at 975.

Therefore, any disparities arising from appropriate prosecutorial practices (or sentences resulting from those practices) are justified under the Guidelines. The Commission obviously knew that such discretion could result in dissimilarity in the practices and policies followed in different districts. Thus, disparities resulting from proper exercises of the discretion by prosecutors cannot be said to be "unusual" or "atypical" enough to warrant departure under section 5K2.0.

Examining section 5K1.1 and cases interpreting its implications towards prosecutorial discretion further supports this result.[5] Section 5K1.1 provides: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." We have held that under section 5K1.1, with limited exceptions, the court cannot depart from the Guidelines based on the substantial assistance of a defendant without a motion from the government. See United States v. Wilkerson, 179 F.3d 1083, 1085 (8th Cir. 1999); see also In Re Sealed Case, 181 F.3d at 130; United States v. Abuhouran, 161 F.3d 206, 208 (3d Cir. 1998), cert. denied, 526 U.S. 1077 (1999).

This court has thus far only found one limitation on the government's discretion arising from the Guidelines in the section 5K1.1 context. In United States v. Anzalone, 148 F.3d 940 (8th Cir. 1998), we held that the government cannot base its decision to withhold a substantial assistance motion solely on factors unrelated to the quality of a defendant's assistance. Id. at 941. "Because sentencing is 'primarily a judicial function' the prosecutor's virtually unfettered discretion under § 5K1.1 [to file a motion for downward departure] is limited to the substantial assistance issue." Id. (quoting

---

[5]We recognize that section 5K1.1 and section 1B1.8 are very different in language and in their placement in the Guidelines. However, examining section 5K1.1 is helpful as a general guide because there is substantial case law concerning how courts have interpreted the interaction of the Guidelines with prosecutorial discretion.

Mistretta v. United States, 488 U.S. 361, 390 (1989)).[6] In short because section 5K1.1 states, "upon motion of the government stating that the defendant has provided substantial assistance," and because the commentary to that section notes that the government shall inform the court of its evaluation of the defendant's assistance, the government must base the decision about whether to file a section 5K1.1 motion, at least in part, on an evaluation of the defendant's substantial help.

As earlier noted, section 1B1.8 and its accompanying commentary contain no language that would limit the prosecutor's discretion concerning when or how often to enter into agreements to extend section 1B1.8 protection. It simply provides that (1) where a defendant agrees to cooperate; and (2) the government agrees to not use self-incriminating information arising out of the cooperation against the defendant; then (3) such information cannot be used to determine the applicable guideline range. This gives the government the power, but not the duty, to enter into any such agreement. Cf. Wade v. United States, 504 U.S. 181, 185 (1992) (stating section 5K1.1 gives government power, but not duty, to make substantial assistance motion).

Prosecutors do not possess completely unfettered discretion. For example, the power of prosecutors to file a section 5K1.1 motion, like a prosecutor's other decisions, are subject to constitutional constraints. Id. These constraints prevent the government from using race or religion or a reason not rationally related to a legitimate government end as the basis for deciding whether or not to file a motion. Id. at 186; Wilkerson, 179 F.3d at 1085. Additionally, just as a defendant may not expect section 1B1.8 protection if he violates the agreement, the government is similarly bound by any

---

[6]We clarified in Wilkerson that the Anzalone decision was based largely on the government conceding two key points: (1) that Anzalone could make a substantial showing of substantial assistance; and (2) that the decision not to make a substantial assistance motion was based entirely on a factor unrelated to Anzalone's assistance. Wilkerson, 179 F.3d at 1086.

-14-

agreement entered into. Cf. United States v. Johnson, 241 F.3d 1049 (8th Cir. 2001) (stating that an agreement between a prosecutor and a defendant that in any way induces the defendant to enter a plea creates duties that the government must satisfy); United States v. Maldonado-Acosta, 210 F.3d 1182, 1183 (10th Cir. 2000) (stating that a district court may examine the government's discretionary refusal to file a section 5K1.1 substantial assistance motion if that refusal violates an agreement between the government and the defendant). However, these constraints on the prosecutor originate not from the Guidelines, but rather from constitutional or contract principles. In Re Sealed Case, 181 F.3d at 142. Such limitations on government conduct apply equally in the section 1B1.8 context. Allegations of violations on these grounds are subject to the same substantial threshold showing as would be required in the section 5K1.1 context under Wade. 504 U.S. at 186. No such allegation or evidence has been produced in this case.

## D. Prosecutorial Discretion

The Supreme Court has noted that "[i]n our criminal justice system, the Government retains "broad discretion" as to whom to prosecute." Wayte v. United States, 470 U.S. 598, 607 (1985) (quoting United States v. Goodwin, 457 U.S. 368, 380, n.11 (1982)). This discretion partially rests on the "recognition that the decision to prosecute is particularly ill-suited to judicial review." Id. "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake."[7] Id.

---

[7]In applying these principles courts have concluded that a prosecutor's decisions about whether to proceed in federal court or District of Columbia court, United States v. Clark, 8 F.3d 839, 843 (D.C. Cir. 1993), and a prosecutor's decisions about whom to bring charges against in federal court, United States v. Snyder, 136 F.3d 65, 70 (1st

-15-

The Guidelines were not meant to infringe upon the usual discretion of the executive branch, United States v. Deitz, 991 F.2d 443, 448 (8th Cir. 1993), and contemplating judicial review of prosecutorial decisions about extending section 1B1.8 protection in these cases convinces us that this same rationale should apply. As we have noted, the Guidelines say nothing about how often section 1B1.8 immunity should be granted. Faced with a disparity in prosecutorial policy between the Northern and Southern Districts of Iowa, courts have no way of knowing which prosecutor's office is reaching an agreement the proper number of times. If a court begins granting departures based upon an interdistrict disparity in practices concerning section 1B1.8 protection, how will it know when it has corrected the mistake? Must the prosecutors in the Northern District begin agreeing to section 1B1.8 protection at the same rate as the Southern District? Or, should it be done according to some national average that the court could compute? Is agreeing to section 1B1.8 protection in ten or twenty or thirty percent of the cases enough?

Considering the various permutations and possibilities of departures on these grounds persuades us that any effort to police this area would improperly infringe upon the discretion of the prosecutor's office to determine enforcement priorities, resource allocations, and other decisions which courts are institutionally unsuitable to make. The overriding goal of uniformity sought through the use of the Guidelines cannot give sentencing courts carte blanche to intrude upon the authority of prosecutors in this instance.

---

Cir. 1998), are not appropriate grounds for departure.

**E.      Other Claims**

**1.      Clark**

The government appeals the district court decision to compel an 18 U.S.C. § 3553(e) motion to depart below the statutory mandatory minimum sentence in Clark's case.  Subject to limited exceptions, a sentencing court may not depart below the mandatory minimum sentence absent motion by the government; however, this does not give the government a general power to control the length of sentences.  United States v. Stockdall, 45 F.3d 1257, 1260-61 (8th Cir. 1995); see also Anzalone, 148 F.3d at 941 (reaffirming Stockdall and extending its rationale to U.S.S.G. § 5K1.1).

This issue arose at Clark's sentencing as a result of the district court's perceived authority to depart downward based on the disparate availability of section 1B1.8 protection.  Because the district court did not possess the authority to depart on the basis of 1B1.8 differences and we are remanding for a new sentencing, the factual circumstances concerning a mandatory minimum sentence are altered considerably. Therefore, it is unnecessary to further address the issue in this appeal.

**2.      Johnson**

Johnson asserts that the false statements he made at his suppression hearing should not qualify for a two-level obstruction enhancement because they were not "material."  He also argues that he should have received a downward adjustment for acceptance of responsibility.

After thoroughly reviewing the briefs and the record, we affirm the district court's imposition of the enhancement for obstruction of justice and refusal to grant a downward adjustment for acceptance of responsibility.  See 8th Cir. R. 47B.

## III.  CONCLUSION

In accordance with this opinion, we overrule those portions of the district court's opinion finding it had authority to depart from the Guidelines based on the disparity in practices regarding section 1B1.8 protection in the Northern and Southern Districts of Iowa.  We affirm the sentences of Ringis, Buckendahl, Valdivia-Cardona, and Johnson .

The district court improperly departed downward from a base offense level of 36 to 28 in determining Clark's sentence.  We reverse and remand Clark's case for re-sentencing in accordance with this opinion.

HEANEY, Circuit Judge, dissenting.

I agree that the sentences for Buckendahl, Ringis, Johnson, and Valdivia-Cardona should be affirmed for the reasons stated in the majority's opinion.  I disagree with the majority, however, with regard to Clark, and for that reason I respectfully dissent.  The Northern District of Iowa's denial of § 1B1.8 protection to Clark resulted in an increase in his base offense level from 28 to 36, yielding significant prejudice to him.  Accordingly, I would affirm the downward departure granted to Clark by the district court.

The goal of the Guidelines was to eliminate disparity in sentencing.  Then-Chief Judge Breyer explained that the Commission's research in sentencing disparity showed that "the region in which the defendant is convicted is likely to change the length of time served from approximately six months more if one is sentenced in the South to twelve months less if one is sentenced in Central California."  Stephen Breyer, The Federal Sentencing Guidelines and the Key Compromises upon Which They Rest, 17 Hofstra L. Rev. 1, 4 (1988).  Regrettably, there is as much regional disparity in sentencing now as there was prior to the creation and enactment of the Sentencing

Commission and Guidelines. The origin of that disparity, however, has shifted from the judiciary to politically appointed prosecutors. Clark's circumstances are a perfect example of this phenomenon.

The Northern District of Iowa has a blanket policy of refusing to grant eligible defendants § 1B1.8 protection, while its sister district to the south routinely provides such protection, as do the majority of the ninety-four federal districts in the nation. This policy has the effect of forcing defendants to serve the mandatory minimum sentence, or increasing the sentences of defendants who incriminate themselves when providing the government with information about the unlawful conduct of others. Similarly situated defendants in the Northern and Southern Districts of Iowa are sentenced differently due to prosecutorial discretion.

The majority asserts that Congress was unconcerned with disparity in sentencing arising from the exercise of prosecutorial discretion. I believe otherwise, and Judge William W. Wilkins supports my conclusion. He writes that the Guidelines system provides "protections against the possibility of prosecutors' undue influence through charging and other plea practices." Response to Judge Heaney, 29 Am. Crim. L. Rev. 795, 798 (1992). Furthermore, he implies that any discretion in sentencing that prosecutors may have gained with the implementation of the Guidelines results from the courts' abdication of its own authority to control the fairness of, and perhaps the availability of, plea bargains. Id. at 805. True to Judge Wilkins's admonition, the majority has sabotaged the judiciary's duty to ensure fair and appropriate sentencing by authorizing prosecutors in the Northern District of Iowa to uniformly increase the time served by defendants who are eligible for leniency in sentencing.

It is essential that prosecutors fulfill their duties in a manner which best furthers the government's interests. Congress has explicitly stated that § 1B1.8 facilitates this endeavor; such protection is requisite to the promotion of justice. It goes without saying that a prosecutor can decide in an individual case that he or she is not going to

request a downward departure. However, neither the prosecutor nor the district court has the right under a sentencing guidelines regime to uniformly refuse to apply a section of the Guidelines that the Commission has deemed important.

The disparity in sentencing that results from the Northern District of Iowa's blanket denial of § 1B1.8 protection is every bit as offensive as the judicial discretion that Congress so vehemently rejected when it created the Guidelines. If we must live with the Guidelines and their policy objectives, we must insist upon an even-handed application of them. I would therefore affirm the district court's downward departure.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-20-